# GILBERT THORSON v. ALBERT LEA PUBLISHING COMPANY.[1]

November 24, 1933.

No. 29,591.

[1]Reported in 251 N. W. 177.

*Meighen, Knudson & Sturtz,* for appellant.
*Moonan & Moonan,* for respondent.

*HILTON, Justice.*

This is a libel action in which plaintiff sought to recover $10,000. The jury returned a verdict in his favor for $250. Defendant appeals from an order denying its blended motion for judgment notwithstanding the verdict or for a new trial.

Defendant is the publisher of a daily newspaper at Albert Lea in Freeborn county, Minnesota, known as the *Evening Tribune.* It consists of 14 pages, and in its issue of November 12, 1931, on page three thereof, appeared the following item:

"On Liquor Charge.

"On Tuesday night the sheriff's department arrested Gilbert Thorson of 314 Fourth Street on a charge of having liquor in his possession for sale, when he was caught with supply of ten gallons. It was expected that a hearing was to be held sometime this afternoon but at the time of going to press the matter had not been heard."

The paper had a circulation of between 5,000 and 6,000 copies daily, except Sunday, chiefly in the city of Albert Lea and surrounding territory. The circulation was almost wholly by mail and carrier, very few copies being sold by news stands and on the streets. Plaintiff resided at the designated street address. There was no other Gilbert Thorson living in Albert Lea or in Freeborn county. Plaintiff had not committed the offense referred to. The man arrested was a Gilbert Thorson residing in another county, who later pleaded guilty and was sentenced. Plaintiff was a railroad freight house foreman and had lived in Albert Lea for 14 years at various street addresses. He was a respectable citizen and a member of a local church. He had a wife, a six-year old son, and an 11-year old daughter living with him. The latter attended the local schools.

As an extra source of income his wife operated a small grocery for several years, but sold it and on January 1, 1931, the family moved to the 314 Fourth street address.

The news item was obtained and written by a young lady reporter who was also an assistant editor of the defendant. She was capable and experienced, having been with the paper for over seven years. She obtained her information, except the street address, from the sheriff, who stated to her that Gilbert Thorson had been arrested "in the south part of town" on the evening of November 10 and that he did not know him. The residence address of plaintiff was in the south part of town. The reporter, who did not know Thorson, examined three directories, one a city telephone directory, one gotten out by a local credit association, and the other a Polk & Company Freeborn county directory. The only Gilbert Thorson appearing in the directories was this plaintiff. The reporter did not call up anyone at the residence of plaintiff nor at the place of his employment. She did, however, attempt to get in touch with the sheriff in the afternoon but could not locate him in his office. She made no investigation of the records of the court. A complaint was filed in the justice court sometime on the day the article was published. The reporter believed the statements in the article were true; she did not bring it to the attention of the editor before its publication, giving as a reason therefor that he was busy, that it was a rush day and the hour for going to press was near at hand, and that in such a situation it was not unusual for her to publish proposed articles without first showing them to the editor. The editor lived five houses from the plaintiff, and before that time had lived less than four blocks away from him. Plaintiff and his wife testified that the editor knew them, had traded at their grocery store, and that in meeting plaintiff had called him by name. This was denied.

The same evening of the publication and within an hour after the same, defendant's editor and the reporter responsible for the article learned through plaintiff's wife that her husband was not the person arrested, and made immediate apology and explanation, coupled with a promise of correction in the newspaper. In the

next evening's issue an apology and retraction was published, which the court instructed the jury constituted as a matter of law a full retraction within the terms of the statute. 2 Mason Minn. St. 1927, § 9397. Whether that instruction, favorable as it was to defendant, was correct we need not here decide. The statute referred to reads:

"In an action for damages for the publication of a libel in a newspaper, the plaintiff shall recover no more than special damages, unless a retraction be demanded and refused as hereinafter provided. He shall serve upon the publisher at the principal place of publication, a notice, specifying the statements claimed to be libelous, and requesting that the same be withdrawn. And if a retraction thereof be not published in as conspicuous a place and type in said newspaper as were the statements complained of, in a regular issue thereof published within one week after such service, he may allege such notice, demand, and failure to retract in his complaint, and may recover both special and general damages if his cause of action be maintained. And, if such retraction be so published, he may still recover general damages, unless the defendant shall show that the libelous publication was made in good faith and under a mistake as to the facts. * * *"

A written demand for a retraction was made four days after the libelous publication; no retraction was published after such demand. Defendant, in a most laudable and praiseworthy manner, attempted to correct the wrong that had been done. The trial court in its charge correctly stated:

"There is no evidence in this case of actual malice or intentional wrongdoing."

Defendant makes numerous assignments of error, most of which have to do with the admission of evidence duly objected to and certain instructions given by the court and refusals to give certain requested instructions.

■ The claim that a new trial should be granted because of excessive damages given under the influence of passion and prej-

udice is not sustainable. If plaintiff was entitled to anything the verdict cannot be said to be excessive.

■ Over the objection of the defendant, plaintiff was permitted to present proof: (a) That oral repetitions to the wife at her mission circle, at her card club, and at numerous other places had caused her ostracism and distress; (b) of the 11-year-old daughter's grief from oral repetitions of the publication by the school children in her room, of the school children pointing their fingers at her, and of her crying; (c) that plaintiff was humiliated and caused keen distress by the above stated effect upon his wife and daughter; (d) that plaintiff believed the publication and oral republications affected his family and his friends, which resulted in his great grief; (e) of distinct items of oral repetitions and of his personal distress, so as to fortify the legal presumption of damage.

The ground upon which the admission of this evidence was objected to was that it was immaterial, irrelevant, incompetent, no foundation in the pleadings, there being no allegation of special damages in the complaint. The assignments here raise the same objections. The allegation of damages in the complaint was:

"That said article was generally read by thousands of people in the city of Albert Lea and in Freeborn county and elsewhere, and caused large comment among the friends and acquaintances of plaintiff and numerous other people in the city of Albert Lea and vicinity. That said publication exposed the plaintiff to ridicule, contempt and caused him much humiliation and mental anguish. That said publication caused a large amount of unfavorable talk and scandal to circulate concerning the plaintiff and damaged and injured his standing in the community and exposed him to ridicule and contempt and caused him much mental anguish and mental suffering and humiliation."

The court in its charge confined the issue to one of general damages. The article was libelous *per se*. Mental suffering is an element of general damage. Such suffering is presumed to have naturally resulted from the publication of a libelous article. What may be presumed may be proved. Under the allegations above

quoted it was competent for plaintiff to testify relative to his own mental suffering, the cause and extent thereof. To that end direct statements of plaintiff to the effect that he suffered mental anguish and that he believed the publication affected his family and friends were admissible. Earl v. Times-Mirror Co. 185 Cal. 165, 196 P. 57; S. S. McClure Co. v. Philipp (C. C. A.) 170 F. 910; Post Pub. Co. v. Peck (C. C. A.) 199 F. 6; Ott v. Murphy, 160 Iowa, 730, 141 N. W. 463; 25 Cyc. p. 533; 37 C. J. p. 95, § 530.

However, testimony of plaintiff as to the effect the publication had upon his wife and daughter caused by the treatment accorded them, and their conduct and actions in his presence, and oral statements to him detailing the remarks and conduct of others resulting in their humiliation was inadmissible. The same is true as regards the testimony of the daughter as to her suffering which resulted from the children at school pointing their fingers at her and that she "cried and didn't want to go back to school." Such evidence could tend only to prove that members of plaintiff's family, strangers to the action, actually did suffer because of the publication, and was wholly immaterial. If plaintiff believed, as he testified he did, that members of his family suffered because of the publication and he himself suffered as a consequence of such belief, it could make no difference that his belief was erroneous or that it was true. His feelings were affected by his belief and not by what his wife and daughter actually suffered. On this particular question the cases of Dennison v. Daily News Pub. Co. 82 Neb. 675, 118 N. W. 568, 23 L.R.A.(N.S.) 362, and Stevens v. Snow, 191 Cal. 58, 214 P. 968, 971, are in point. In the latter, admission of testimony of the plaintiff relative to the effect a libelous publication had on his wife was held error. The court, after quoting the rule laid down in another case as to admission of evidence to show of what members the plaintiff's family consisted, and the damages consequently enhanced by the fact that the members of the plaintiff's family would suffer by reason of the disgrace visited upon plaintiff by the slanderous charge, said [191 Cal. 65]:

"But that rule has never been extended so as to render admissible evidence to prove that members of plaintiff's family actually did

suffer in consequence of the publication. To do so would be to import into the case collateral issues upon which no logical limitations could be placed. Another vice inherent in the ruling is that it would serve to make an element of defendants' liability depend upon, not what would be the natural and probable effect of the wrong done by them, but upon what was its actual effect upon the particular mentality, temperament, and nervous constitution of an individual who was a stranger to the action."

The court in its charge to the jury stated:

"There is one thing I want to caution you about, so that you will not be in error, and that is, this is an action for damage to no one else than Gilbert Thorson. If you find in his favor, you would determine what his damage is. I have permitted, and properly so, evidence with reference to the effect of this article as claimed by the wife and child, and some evidence with reference to other matters. Evidence was received in that score not because Gilbert Thorson can collect any damage because this article may have affected his wife, but her conduct as it affects him is for your consideration, and that is and was the purpose of that kind of evidence."

This admonition did not cure the error. However, the amount of the verdict does not reflect a prejudicial reaction on the minds of the jurors. The reception of the evidence was error without prejudice.

■ The unfortunate occurrence from which this action arose was one that could have happened without malice or wrong intent in the best managed of newspaper offices. In order that information which the public is entitled to receive shall be furnished seasonably there cannot be long delays in the publication thereof. Newspapers, performing as they do one of the most important of public services, are entitled to all reasonable protection, especially where there is, as here, an absence of malice. The statute providing for a retraction was passed to afford such protection. It grants immunity to a newspaper from damages for a libelous publication if, after retraction, it is able to show that the libelous publication

was made in good faith, under a mistake of facts. In this case there was an admitted misstatement of facts—the false identification of plaintiff as the criminal. Whether the publication was made in good faith depends upon whether defendant was free from negligence in making it. If it was, there was immunity from damages. If it was not, then general damages were properly awarded.

"Mere belief in the truth of the publication is not necessarily enough to constitute 'good faith' on part of the publisher; there must have been an absence of negligence as well as improper motives in making the publication. It must have been honestly made in the belief of its truth, and upon reasonable grounds for this belief, after the exercise of such means to verify its truth as would be taken by a man of ordinary prudence under like circumstances." Allen v. Pioneer-Press Co. 40 Minn. 117, 41 N. W. 936, 3 L. R. A. 532, 12 A. S. R. 707; Gray v. Times Newspaper Co. 74 Minn. 452, 77 N. W. 204, 73 A. S. R. 363.

The question of negligence on the part of defendant was for the jury. We cannot say that there was not sufficient evidence to establish negligence.

We have carefully examined all of the assignments of error and find no ground for reversal.

Affirmed.