[L. A. No. 21512.   In Bank.   Mar. 5, 1951.]

ERIC L. PRIDONOFF, Appellant, v. ZLATKO BALOKOVICH et al., Respondents.

Paul Barksdale D'Orr and Brodie E. Ahlport for Appellant.

Edward Mosk, Pacht, Tannenbaum & Ross, Clore Warne and Stuart Kadison for Respondents.

TRAYNOR, J.—Plaintiff appeals from a judgment of dismissal of his action for libel, entered pursuant to an order sustaining without leave to amend defendants' demurrer to his third amended complaint.

Plaintiff alleged in his complaint that "defendants together composed, wrote and caused to be printed and published, of and concerning the plaintiff, in a daily newspaper known as 'Narodni Glasnik,' and distributed to, and which was read by, large numbers of people in the County of Los Angeles, and in other parts of the State of California, and numerous other cities and counties throughout the United States, the following matter:

" 'Eric Pridonoff, while one of the American Embassy in Belgrade, was caught carrying on flagrant espionage activities. The Yugoslav government requested his recall and we recalled him. When Pridonoff got back to the United States, he wrote a series of articles for the Hearst press violently attacking the Yugoslav government and intimating clearly that if the Yugoslav people would revolt against their government, we would help them. These articles were mimeographed both in English and Serbo-Croatian, and distributed through the American Reading Room in Belgrade. We read them ourselves while we were there.' "

In the first count of his complaint plaintiff alleged that defendants wrote and published the allegedly libelous article, that all the statements therein, with the exception of the statement that plaintiff was a member of the American Embassy, were false, that defendants knew the statements were false and caused their publication out of malice and ill will toward plaintiff with intention to injure, disgrace, and defame him, and that as a result of the publication of the statements plaintiff suffered general damages in the amount of $100,000.

In the second count plaintiff alleged that because of certain circumstances the statements were given a particularly defamatory interpretation by the persons who read them. It was further alleged that plaintiff "is informed and believes and therefore alleges that as a direct and proximate result of said false and malicious publication, and its consequent injury to his reputation as a man, and as a consulting engineer, he suffered special damages in this, that he lost employment, between July 1, 1947, and February 1, 1948, as an engineer with Parsons Aerojet Company, of Los Angeles, California, and compensation $5,000." Plaintiff prayed for judgment in the amounts of $100,000 general damages, $100,000 exemplary damages, and $5,000 special damages.

Libel is defined as "a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.) Defendants contend that the article was not libelous in describing plaintiff as being engaged in espionage for the United States; that it is proper and praiseworthy for a person to be a spy for his own country. Had the article said only that plaintiff was engaged in espionage for the United States, defendants' contention might have merit. ▮ The article went further, however. It described plaintiff as one of the American Embassy, a person who should not engage in espionage, and charged that nevertheless he engaged in such flagrant espionage activity that his recall was requested and that the United States honored the request. The publication thus carried the clear implication that plaintiff was unfit for his job as a representative of the United States serving abroad. It had a direct tendency to injure him in his occupation and was accordingly libelous.

▮ Plaintiff cannot recover general or exemplary damages, however. Civil Code, section 48a, provides:

"In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after

knowledge of the publication or broadcast of the statements claimed to be libelous."

The plain language of the statute governs "*any* action for damages for the publication of a libel *in* a newspaper." (Italics added.) Even though plaintiff's action is for the publication of a libel in a newspaper, he contends that by virtue of the provision requiring service of the demand for correction on the publisher the statute applies only to the publisher and not to his employees, columnists, and other authors. (See *Comer* v. *Louisville etc. Railroad Co.,* 151 Ala. 622 [44 So. 676, 677].) Since his action is against the authors of the alleged libel and not against the newspaper publisher he concludes that section 48a has no application. It does not follow, however, that because the person upon whom the notice to retract must be served is the publisher of the newspaper, the statute applies to him alone. Reporters, columnists, authors, critics, editors, and the publisher are all participants in newspaper publications. When error is made, however, it is the publisher who has power to make correction. In providing for the substitution of a retraction for general and exemplary damages it was reasonable, therefore, for the Legislature to provide that the notice should be served upon him. The retraction provides as adequate a substitute for general and exemplary damages in the case of a suit against the author as in one against the newspaper publisher himself. Since plaintiff does not allege a demand for the publication of a correction or the refusal thereof, section 48a precludes recovery of general or exemplary damages arising from the publication of the alleged libel. (*Werner* v. *Southern California Associated Newspapers,* 35 Cal.2d 121 [216 P.2d 825, 13 A.L.R.2d 252].)

Plaintiff does allege, however, that he has suffered special damages as a result of the publication of the alleged libel. Section 48a permits their recovery even though no correction has been demanded or refused. The general demurrer was therefore properly sustained only if the allegation of special damages is insufficient to sustain a cause of action therefor.

Special damages are "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other." (Civ. Code, § 48a.) If special damages are claimed, as in the

present case, for injury to the plaintiff's trade, profession, or occupation, the nature and extent of the loss must be specifically set forth. "To prevent a surprise on the defendant it is the general rule that the plaintiff must state in his complaint the particular damage which he has sustained or he will not be permitted to give evidence of it." (*Skaggs* v. *Wiley*, 108 Cal.App. 429, 434 [292 P. 132]; *Peabody* v. *Barham*, 52 Cal.App.2d 581, 585 [126 P.2d 668]; *Lejeune* v. *General Petroleum Corp.*, 128 Cal.App. 404, 418-419 [18 P.2d 429].) A general allegation of the loss of a prospective employment, sale, or profit will not suffice. (*Peabody* v. *Barham, supra*; *Wilson* v. *Dubois*, 35 Minn. 471, 473-474 [29 N.W. 68, 59 Am.Rep. 335]; *Denney* v. *Northwestern Credit Assn.*, 55 Wash. 331, 333 [104 P. 769, 25 L.R.A.N.S. 1021]; *DeWitt* v. *Scarlett*, 113 Md. 47, 51-52 [77 A. 271]; *Tower* v. *Crosby*, 214 App.Div. 392 [212 N.Y.S. 219, 220]; *Pollard* v. *Lyon*, 91 U.S. 225, 237 [23 L.Ed. 308].)

▮ Plaintiff's allegation of special damage is sufficiently specific. He alleges that as a result of the publication of the alleged libel he has lost employment with a specific employer, the Parsons Aerojet Company, for a specified period, to his damage in the amount of $5,000. Defendants are thereby informed of the exact nature of the claim of special damages and afforded an opportunity to prepare a defense against it. That is all that is required of the allegation.

▮ Defendants contend, however, that the allegation is insufficient for the reason that the special damages are alleged only on information and belief. Plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true. (Code Civ. Proc., § 446; *Campbell-Kawannanakoa* v. *Campbell*, 152 Cal. 201, 206 [92 P. 184]; *North* v. *Cecil B. DeMille Productions*, 2 Cal.2d 55, 58-59 [39 P.2d 199]; *Swars* v. *Council of City of Vallejo*, 64 Cal.App.2d 858, 865 [149 P.2d 397]; *Thompson* v. *Sutton*, 50 Cal.App.2d 272, 279 [122 P.2d 975].) Plaintiff would ordinarily learn that he lost employment because of the libel from the declarations of others. It is therefore appropriate for him to allege such matters on information and belief. (*Campbell-Kawannanakoa* v. *Campbell, supra.*)

*Hall* v. *James*, 79 Cal.App. 433, 435-436 [249 P. 876], does not compel a contrary result. In that case the court held insufficient an allegation on information and belief of the amount of damages sustained by plaintiff as the result of

defendant's breach of contract. The court recognized that matters that are not within the personal knowledge of the pleader may be alleged on information and belief, but stated that "plaintiff is certainly in a position to know better than any informant the financial loss he sustained by reason of the breach of contract." (*Hall* v. *James,* 79 Cal.App. at 436 [249 P. 876].) In the present case, the amount of financial loss plaintiff has sustained and the fact that the loss was caused by the libel are not necessarily within his personal knowledge, but may be ascertainable only from the declarations of others and may therefore be alleged on information and belief.

The judgment is reversed and the cause remanded with directions to overrule the demurrer and to allow defendants to answer.

Gibson, C. J., Edmonds, J., and Spence, J., concurred.

CARTER, J.—I concur in the reversal of the judgment of dismissal, but do not agree with the law stated in the majority opinion. The majority decision holds that, by implication at least, section 48a of the Civil Code is valid and that it applies to the author of a newspaper article although he has no connection with the newspaper or its publisher; that is, that unless a correction or retraction is demanded and refused, only special damages may be recovered against the author for the publication of a libelous article in a newspaper. I cannot agree with that proposition for two reasons: (1) Section 48a, which grants to newspapers immunity from liability for libelous publications, is invalid, and its invalidity is brought into sharp focus when it is extended to the author of the libelous article. (2) Section 48a does not apply to authors.

The validity of section 48a has been before this court heretofore (*Werner* v. *Southern Cal. Associated Newspapers,* 35 Cal.2d 121 [216 P.2d 825, 13 A.L.R.2d 252]). I filed a dissenting opinion in that case, and the Supreme Court of the United States allowed an appeal, but a settlement was made of plaintiff's claim and the appeal has been dismissed. I adhere to the views expressed in my dissent in the Werner case, but it is apparent that the broadened scope now given to section 48a by the majority opinion in this case emphasizes its unconstitutionality and calls for further discussion. Under the construction now given to section 48a, a correction or retraction would have to be demanded of an author of an

article if it appeared in a newspaper, but if the identical statements appeared in an article published in a magazine or in pamphlet form there would be no immunity. By what legerdemain is an author immunized from general and exemplary damages when his libelous article is published in a newspaper, but is not so immunized when such article is published in a magazine, pamphlet or other form of publication? What possible basis could exist for so classifying authors of libelous articles? These questions are not answered in the majority opinion.

In holding there was no denial of equal protection, the majority said in the Werner case (p. 132): "The Legislature could reasonably conclude that defamation suits against *newspapers* and radio *stations* constituted the most conspicuous example of the danger it sought to preclude. It is not prohibited by the equal protection clause from striking the evil where it is felt most. . . . Similarly in this case, we cannot say that the Legislature could not reasonably conclude that because of the *business* they are engaged in, *newspapers* and radio *stations* are the most frequent *objects* of defamation actions and that the danger of excessive damages in actions against *them* is greatest because of .*their* reputed ability to pay. See, Morris, *Inadvertent Newspaper Libel and Retraction*, 32 Ill.L.Rev. 36, 43; *cf., Packard* v. *Moore*, 9 Cal.2d 571, 578-580 [71 P.2d 922], discussing rule of inadmissibility of evidence that defendant is insured in personal injury actions.

"Moreover, in balancing the danger of recoveries of excessive general damages against leaving plaintiffs with no effective remedy for injury to their reputations, the Legislature could properly take into consideration the fact that a retraction *widely circulated by a newspaper* or radio *station* would have greater effectiveness than a retraction by an *individual* and could thus class newspapers and radio stations apart. . . .

"Section 48a may also be sustained under the equal protection clause on the theory that its purpose is to encourage the dissemination of news. Although it extends its protection to those who may deliberately and maliciously disseminate libels, the Legislature could reasonably conclude that it was necessary to go so far effectively to protect those who in good faith and without malice inadvertently *publish* defamatory statements." (Emphasis added.) Thus it is seen that several *things* are *stressed* as a basis for the classification approved by the majority in the Werner case—the Legislature could decide that unfounded suits against *newspapers*,

that is, the *entity or publisher* thereof, are of more frequent occurrence with the possible evil of their being mulcted for excessive damages because of their reputed wealth. But, here we do not have a suit against a newspaper as such, or the publisher. It is against an individual—the *author* of the libel. Merely because of the circumstance that may have caused it to reach the pages of a newspaper instead of a magazine or pamphlet is not justification for exonerating the author. Authors do not fall in the class of newspapers—publishers who are said to be conspicuously subject to unfounded suits. Hence the classification cannot be justified as to authors on that ground. Furthermore, as seen from the foregoing quotation from the majority opinion in the Werner case, it is also said that the Legislature could find that those *engaged* in the *"business"* of operating *newspapers* are the most common objects of defamation actions because of their reputed ability to pay. Manifestly that reasoning cannot apply to authors, and it also indicates (later discussed) the inapplicability of section 48a to authors. They are not in the newspaper business and their work might appear in a newspaper even without their knowledge. It is also said in the quotation from the Werner case, *supra,* that *newspapers* are more widely circulated and thus a retraction would be more effective. An author as such has no circulating medium, for he publishes nothing, and a demand upon him to make a retraction would be idle, for he could not compel the newspaper to publish it and he has no medium in which to publish it himself. Finally, it is said that the classification should extend to those who inadvertently *publish* defamatory statements to accomplish their objective in the dissemination of news. An author is not disseminating news. He is not operating a newspaper with the accompanying necessity of speed in bringing news to the attention of the public.

It should be clear, therefore, that none of the reasons for the approval of the classification sanctioned in the Werner case fit the author of the defamatory statements here involved. All of those reasons are pertinent only to the *newspaper business*—a publisher. They do not justify a different liability merely because the defamation *appears* in a newspaper regardless of who prepared it. The ramifications arising from a contrary view are disturbingly many. An advertiser, a writer of a letter, a columnist and similar contributors to newspapers would thus have their liability restricted to special damages.

The Legislature did not intend by section 48a to extend protection against actions for libel beyond the publisher of a newspaper. It will be remembered from the wording of the section that a publication of a libel "in" a newspaper is covered. That might indicate that the only requirement was that it appear in a newspaper, but "in" may be used in the sense of "by." (*Beatty* v. *Hughes,* 61 Cal.App.2d 489 [143 P.2d 110].) Thus the publication must be by a newspaper to come within the section and the other provisions of the section make that conclusion inescapable. A correction or retraction must be demanded of the publisher and refused to authorize the recovery of general damages. Upon whom is the demand made? The *publisher.* Where? At the *place of publication.* Plainly, the publisher is the operator of the newspaper. He is not necessarily the author. The author may not be in the publishing business. He does not necessarily have a *place* of publication. If "publish" is given a broad connotation to mean any place the libel is circulated, it would be impossible for the defamed person to know where or upon whom he had to serve his demand. Neither the newspaper operator nor the author would be in all places the paper was circulated. It can only mean, therefore, that the publisher is the operator of the newspaper and the place of publication is the site where it is produced. Moreover, the retraction must be published in a regular issue of the paper. Only the publisher issues regular editions. It would avail him nothing to make a demand on the author, as he could not compel a retraction by the paper. Suppose the newspaper is published out of this state and where no correction or retraction is required, but the author resides in this state. Must a retraction be demanded before suit against the author?

*Comer* v. *Louisville & N. R. Co.,* 151 Ala. 622 [44 So. 676], is precisely in point. There the statute was similar to our section 48a, and the defendant had prepared an article which he paid the newspaper to publish. It was held that the statute did not apply to such person, the court saying: ". . . we are left to the wording of the statute and its apparent object for our guide in its interpretation. The statute provides that the notice shall be served in writing 'on the publisher or publishers of said newspaper,' and no provision is made for serving notice on any other person. The act seems to be for the purpose of preventing litigation in regard to those articles which may have found their way into the columns of the newspapers by inadvertence or without knowledge or care-

.ful scrutiny on the part of the publishers. We know that the modern daily paper, with its numerous reporters, gathering news from every quarter, and its busy employees, working until late into the night to place the latest news before the readers early in the morning is peculiarly liable to being inadvertently led into trouble in these matters, and it seems a proper classification to regulate this class of libel suits as applied to the publishers of newspapers. But with the individual, who prepares his article and pays for its publication, no such reason exists. For these reasons we hold that this provision of the statute does not apply to the defendants in this suit. It is true that the Supreme Court of North Carolina applied a libel law somewhat similar to our statute to an individual who was sued for a libel published in a newspaper; but it is to be noted that the particular point was not raised in that case, and, besides, the wording of the statute was different, in that the North Carolina statute required that the notice should be served 'on the defendant or defendants,' and not on the publisher of the newspaper, as in our statute. *Williams* v. *Smith,* 134 N.C. 249, 46 S.E. 502.'' The same trend has been evidenced in other cases. (*Clementson* v. *Minnesota Tribune Co.,* 45 Minn. 303 [47 N.W. 781], stating that the purpose of the statute was to require service on the publisher of the newspaper; *Thorson* v. *Albert Lea Publish. Co.,* 190 Minn. 200 [251 N.W. 177, 90 A.L.R. 1169], protection is for newspapers because of the difficulties of preventing mistakes; *Lydiard* v. *Wingate,* 131 Minn. 355 [155 N.W. 212].)

That the intention of the Legislature must be ascertained from the words it uses is clearly stated by the author of the majority opinion in this case as author of the majority opinion in *People* v. *Knowles,* 35 Cal.2d 175, 182 [217 P.2d 1]. He there said: ''The will of the Legislature must be determined from the statutes; intentions cannot be ascribed to it at odds with the intentions articulated in the statutes. . . . The court turns first to the words themselves for the answer. . . . Primarily, however, the words, in arrangement that superimposes the purpose of the Legislature upon their dictionary meaning, stand in immobilized sentry, reminders that whether their arrangement was wisdom or folly, it was wittingly undertaken and not to be disregarded.'' Even if the statute is susceptible of either construction, that given it by the majority decision raises serious constitutional questions not considered in the Werner case and hence the established rule applies that: ''It is a well-recognized canon of interpre-

tation that, where a legislative enactment is susceptible of two constructions, one consistent and the other inconsistent with the provisions of the constitution, such enactment should be so construed as to make it harmonious with the constitution and comport with the legitimate powers of the legislature.'' (5 Cal.Jur. 615.)

Being of the opinion that the complaint states a cause of action for special, general and exemplary damages, the judgment should be reversed with directions to the trial court to overrule the demurrer and allow the defendants to answer as to all the issues presented by the complaint.

SCHAUER, J.—I concur generally in the views and conclusion reached by Mr. Justice Carter. The vice in section 48a which seems to me most lethal, as I endeavored to point out in my dissent in *Werner* v. *Southern Cal. etc. Newspapers* (1950), 35 Cal.2d 121, 150 et seq. [216 P.2d 825, 13 A.L.R.2d 252],[1] is its licensing of two arbitrarily selected groups to maliciously engage in deliberately false libels.

The courts of last resort, both state and national, have unremittingly given staunch support to the constitutional freedoms of speech and press as against prior restraints. I am one who has been zealous to that end; but I had thought that the injustices which sometimes must flow from lack of prior restraints would be deterred, mitigated or compensated by subsequent responsibility, general and punitive, for abuses of the right.[2] Then in the Werner case, I found the state Legislature giving, and a majority of this court upholding, prior absolution to the selected groups of newspapers and radio broadcasters as against subsequent responsibility for either general or punitive damages and regardless of whether the libel or slander were inadvertent or knowingly and maliciously false.

---

[1]Whether the majority holding in Werner will stand on review by the United States Supreme Court has not as yet been determined. (Appeal to United States Supreme Court filed Aug. 25, 1950 [19 U.S. Law Week 3074]; probable jurisdiction noted Oct. 16, 1950 [19 U.S. Law Week, Nov. 14, 1950, Index, p. 20]; appeal dismissed on motion of counsel for appellant Jan. 2, 1951 [19 U.S. Law Week, Feb. 6, 1951, Supplement to Index, p. 11].)

[2]California Constitution, article I, section 9: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right. . . ."

Civil Code, section 3294: "[W]here the defendant has been guilty of . . . malice . . . the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

Now I find the majority of the court extending their construction and effective application of the legislative act (Civ. Code, § 48a) to immunize the author of a slander or libel, whether inadvertent or deliberate, as well as the newspaper or broadcasting agency which gives circulation to the calumny.

An author, my prevailing associates hold, may deliberately and maliciously compose the vilest calumny, and if he can procure its publication in a newspaper or by a broadcasting company, by paid advertisement or otherwise, he can come within the encouraging arms of section 48a and repose securely immune from either general or punitive damages.

Does the spawning of such a doctrine bring pride to the free press of America? Or, perhaps, does the insistence of the newspapers and broadcasters on having something very akin to foolproof statutory immunity from liability in all libel-slander cases, just and unjust, rather than leaving to the courts their protection as against unfounded claims, stem in some measure from the very fact that a court of last resort which will sustain such a doctrine may be found?