702 So.2d 1376 (1997)
Ellen Alperstein MANCINI, Appellant,
v.
PERSONALIZED AIR CONDITIONING & HEATING, INC., a Florida corporation, Appellee.
No. 97-1525.
District Court of Appeal of Florida, Fourth District.
December 31, 1997.
*1377 Donald Feldman and William M. Franz of Weiss & Handler, P.A., Boca Raton, for appellant.
John J. Anastasio, Port St. Lucie, for appellee.
PARIENTE, BARBARA, J., Associate Judge.
The legal question posed by this petition for writ of certiorari is whether a columnist for a local newspaper is entitled to pre-suit notice pursuant to section 770.01, Florida Statutes (1995). Because petitioner (defendant) falls within the statutory protection, she was entitled to pre-suit notice before respondent (plaintiff) could institute a libel action arising from allegedly defamatory statements made by defendant in her newspaper column. Accordingly, we grant the petition.
Defendant is an assistant state attorney who heads the Consumer & Business Assistance Division of the state attorney's office. She also writes a regular weekly column on consumer matters for the Stuart & Port St. Lucie News. Plaintiff's lawsuit for libel arises from statements contained in two of defendant's columns. Plaintiff claims that the publications were libelous because defendant allegedly implied that plaintiff was the same corporation as a defunct and discredited corporation known as Air Engineers.
Defendant's motion to dismiss asserted plaintiff's failure to comply with the statutory notice requirements of section 770.01, which she claims was a condition precedent to plaintiff's suit for libel. Failure to comply with the notice provision of section 770.01 requires dismissal of the complaint for failure to state a cause of action. See Gifford v. Bruckner, 565 So.2d 887 (Fla. 2d DCA 1990); Davies v. Bossert, 449 So.2d 418 (Fla. 3d DCA 1984); Cummings v. Dawson, 444 So.2d 565 (Fla. 1st DCA 1984). If section 770.01 applies, defendant is entitled to certiorari relief from the trial court's refusal to dismiss the complaint for the failure to meet this pre-suit requirement. See Bridges v. Williamson, 449 So.2d 400 (Fla. 2d DCA 1984); see generally Citron v. Shell, 689 So.2d 1288 (Fla. 4th DCA 1997).
Section 770.01, the notice provision, and section 770.02, the retraction provision, grant valuable rights by allowing certain defendants in defamation actions to avoid punitive damages by the timely publication of a correction, apology or retraction. The ability to print the correction, apology or retraction is dependent upon first receiving notice of the alleged defamatory statement as required by section 770.01. This section provides that:

Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days *1378 before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he alleges to be false and defamatory.
§ 770.01 (emphasis supplied).
Plaintiff successfully argued to the trial court and continues to assert in response to defendant's petition, that section 770.01 does not apply to defendant. To the extent this argument is based on the fact that defendant is a full-time assistant state attorney as well as a part-time columnist, we discern no logical distinction between defendant and any other columnist. To the extent that plaintiff asserts that the statute is applicable only to actions against the newspaper itself, as opposed to the individuals writing for the newspaper, this restrictive interpretation of section 770.01 is not supported by the language of the statute.
The plain language of the statute makes no distinction between suits against the newspaper itself and the individuals who write for it, without whom there would be no "newspaper." "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction." Ross v. Gore, 48 So.2d 412, 415 (Fla.1950).
Although plaintiff is unable to point to any limiting language within section 770.01, plaintiff points to language from Ross as authority for its narrow interpretation. We disagree that Ross can be interpreted to exclude reporters, editorial writers and columnists from the protection of 770.01. To do so would be contrary not only to the plain language of the statute, but to the legislative intent of the statute as expressed in Ross.
In Ross, our supreme court upheld the constitutionality of chapter 770 against a due process and equal protection attack that the statute unconstitutionally limited punitive damages and unfairly discriminated in favor of newspapers and periodicals.[1] Our supreme court observed that there is a valid reason for granting a special privilege to newspapers and periodicals as distinguished from any other classification of defendants. See Ross, 48 So.2d at 414. The purpose of the statute is to protect the public's interest in the free dissemination of news. See id. at 415.
It was in this context that our supreme court made the statement relied upon by plaintiff that
the provision of the statute requiring notice in writing of the defamatory publication, as a condition precedent to filing suit, and as required only in suits against newspapers and periodicals is a valid classification based upon some difference in the classes having a substantial relation to the purpose for which the legislation was designed.
Id. at 416 (emphasis supplied). There is nothing in Ross to indicate that in using the term "newspaper" our supreme court was referring only to the entity as distinguished from the individual columnists, reporters and editorial writers who write for the newspaper.
To the contrary, in extolling the value of the American tradition of a free press, our supreme court explained why the statutory notice and retraction provisions are an important component in protecting that tradition:
In the free dissemination of news, then, and fair comment thereon, hundreds and thousands of news items and articles are published daily and weekly in our newspapers and periodicals. This court judicially knows that it frequently takes a legal tribunal months of diligent searching to determine the facts of a controversial situation. When it is recalled that a reporter is expected to determine such facts in a matter of hours or minutes, it is only reasonable to expect that occasional errors will be made. Yet, since the preservation of our American democracy depends upon the public's receiving information speedily particularly upon getting news of pending matters while there still is time for public *1379 opinion to form and be feltit is vital that no unreasonable restraints be placed upon the working news reporter or the editorial writer.

Id. at 415 (emphasis supplied). Plaintiff ignores this language in Ross, while focusing only on language that refers to suits against newspapers as opposed to private persons. Id. at 414.
Further, there is nothing in the language of the companion retraction provision, section 770.02, that would limit the protection to the newspaper publisher as distinguished from its reporters, editorial writers and columnists. The retraction provision of subsection 770.02(1), in "the case of a newspaper" provides that
a full and fair correction, apology, or retraction... [be] published in the same editions or corresponding issues of the newspaper or periodical in which said article appeared and in as conspicuous place and type as said original article.
Plaintiff argues that because only the "newspaper" has the power to publish a retraction, the statute should logically be limited to the corporate entity rather than the individuals working for the newspaper. Contrary to plaintiff's assertion, it is not the power to retract that defines the scope of the notice provision. In fact, policies on retraction might vary from one newspaper organization to another. Indeed, it is probably more likely that the author of a weekly column, such as defendant here, would actually have the ability to have a retraction printed within her column in compliance with the requirements of section 770.02. Defendant was never afforded that opportunity.
Even if only the corporate entity, and not the individual reporter, editorial writer or columnist had the power to retract, the issue is not who has the power to retract, but whether a retraction occurs. If a retraction does not timely occur as provided for in section 770.02, the plaintiff may file suit without any limitation on his or her right to recover punitive damages. Under plaintiff's interpretation of the statute, if both the newspaper and the reporter were sued and a retraction printed, the corporate publisher of the newspaper would be protected from punitive damages, while the reporters, editorial writers and columnists would not.
Justice Traynor, in Pridonoff v. Balokovich, 36 Cal.2d 788, 228 P.2d 6 (1951), writing for the California Supreme Court, reached the same conclusion as this court reaches today under a similar statute. In Pridonoff, the plaintiff urged that the notice provisions of the California statute applied only to the newspaper publisher and not to the employees, columnists, and other authors because the statute required service of the demand for correction on the publisher.[2] The Pridonoff court explained that "[r]eporters, columnists, authors, critics, editors, and the publisher are all participants in newspaper publications."
Id. at 791, 228 P.2d 6. Pridonoff thus held that the statutory notice applied to participants in newspaper publications as well as to the publishers.
Eighteen years later, Justice Traynor, reiterating the holding in Pridonoff, explained that the purpose of the statute
could be circumvented if the section were limited to newspaper publishers and radio broadcasters.... Otherwise, that section would protect, not those engaged in the rapid dissemination of news, but merely those who owned or operated the facilities for such dissemination; it would protect, not a special form of news reporting, but a special form of investment. If without first demanding and being refused a retraction, plaintiffs could reach behind the publisher or broadcaster and sue instead the offending reporter or other participant [the statute] would serve little purpose and would actively discourage the very free and rapid dissemination of new[s] it seeks to encourage.

Field Research Corp. v. Superior Court of San Francisco, 71 Cal.2d 110, 77 Cal.Rptr. 243, 453 P.2d 747, 751 (1969) (citing Pridonoff).
*1380 The issue of whether section 770.01 applies to individuals who write the columns, editorials and articles for the newspaper has never been squarely addressed in Florida.[3] However, in Cook v. Pompano Shopper, 582 So.2d 37 (Fla. 4th DCA 1991), the defendants included the authors of the article, the newspaper itself, and the owners of the newspaper. One of the issues on appeal was the sufficiency, under section 770.01, of letters demanding retraction. In holding that the notice was legally insufficient because it did not specify with particularity the allegedly defamatory statements, neither our court nor the parties attempted to differentiate between the author of the article and the publisher.
Our interpretation of the scope of section 770.01 does not conflict with the series of cases holding the statute does not apply to "non-media defendants." See, e.g., Davies; Bridges; Gifford. Rather, the question is what is meant by "non-media defendant," a term not appearing within the statute, but only in case law. See, e.g., Della-Donna v. Gore Newspapers Co., 463 So.2d 414 (Fla. 4th DCA 1985); Demolfetta v. American Sightseeing Tours, Inc., 450 So.2d 312 (Fla. 3d DCA 1984).
The use of the phrase "non-media defendant" in these cases was not meant to distinguish between individuals and corporations, but rather to separate third parties who are not engaged in the dissemination of news and information through the news and broadcast media from those who are so engaged. In Davies the defendant, found to be a "non-media defendant," was a private citizen who made the alleged defamatory statements over an emergency channel of a citizen's band radio. In Bridges the court declined to extend the reach of the statute to protect a private individual whose allegedly libelous statement had been republished by the newspaper. In Gifford the "non-media defendant" was an aerial advertising firm being sued for a banner towed overhead by airplane. Most recently, in Tobkin v. Jarboe, 695 So.2d 1257 (Fla. 4th DCA), review granted, 22 Fla. L. Weekly, ___ So.2d ___ (Fla. Nov. 6, 1997), we held that the protection of section 770.01 did not cover individuals who sent letters to The Florida Bar.
Taken to its logical extreme, the interpretation urged by plaintiff would effectively circumvent the notice provisions of section 770.01 and eviscerate the intent of chapter 770 by allowing a plaintiff to sue newspaper reporters and columnists for libel and slander without naming the newspaper publisher. Cf. Orlando Sports Stadium v. Sentinel Star Co., 316 So.2d 607, 609 (Fla. 4th DCA 1975). We decline to interpret the statute in a manner at odds with its plain language, in a manner inconsistent with its overall purpose, or in a manner that would protect a corporate publisher from punitive damages, but not protect the reporters, editorial writers and columnists who are the lifeblood of a free press.
Accordingly, we grant the petition for writ of certiorari and quash the order denying defendant's motion to dismiss.
PETITION GRANTED; REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
GUNTHER and GROSS, JJ., concur.
NOTES
[1] The wording of the current statute is essentially the same as it was when Ross v. Gore, 48 So.2d 412 (Fla.1950), was decided, except that it has since been amended to include radio and television broadcasts. See Davies v. Bossert, 449 So.2d 418 (Fla. 3d DCA 1984); Bridges v. Williamson, 449 So.2d 400 (Fla. 2d DCA 1984).
[2] Florida's statute does not contain the potentially troublesome provision found in the California Civil Code: "Plaintiff shall serve upon the publisher, at the place of publication ... a written notice specifying the statements claimed to be libelous and demanding that the same be corrected." Compare Cal. Civ.Code § 48a (emphasis supplied) with § 770.02, Fla. Stat. (1995).
[3] Defendant claims that because the docket sheet in Orlando Sports Stadium v. Sentinel Star Co., 316 So.2d 607 (Fla. 4th DCA 1975), named several individuals as defendants, our court applied the statute to reporters and columnists sub silentio. However, nothing in the opinion, expressly or implicitly, addresses this issue.