NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


ROBERT MAZUR, INDIVIDUALLY;    )
KYC SOLUTIONS, INC.; PENGUIN    )
RANDOM HOUSE, LLC; LITTLE,    )
BROWN AND COMPANY, INC.; GOOD    )
FILM, LTD.; BROAD GREEN    )
PICTURES, LLC; INFILTRATOR    )
PRODUCTIONS LIMITED; ELLEN    )
BORWN FURMAN; BRAD FURMAN;    )
YUL VAZQUEZ; AND GOOD FILM    )
PRODUCTIONS U.S., INC.,    )
                                )
        Petitioners,            )
                                )
v.                              )    Case Nos.   2D18-4268
                                )                2D18-4269
FRANCISCO JAVIER OSPINA         )
BARAYA,                         )    CONSOLIDATED
                                )
        Respondent.             )
_____ )

Opinion filed July 10, 2019.

Petitions for Writs of Certiorari to the Circuit
Court for Pinellas County; Cynthia J.
Newton, Judge.

Gregg D. Thomas, Carol Jean LoCicero,
and Mark R. Caramanica of Thomas &
LoCicero, P.L.; Laura R. Handman of Davis
Wright Tremaine LLP, Washington, DC;
and Geoffrey S. Brounell of Davis Wright
Tremaine LLP, New York, NY, for
Petitioners Robert Mazur, individually; KYC
Solutions, Inc.; Penguin Random House,
LLC; and Little, Brown and Company, Inc.

Gregory W. Kehoe of Greenberg Traurig, P.A., Tampa, for Petitioner KYC Solutions, Inc.

Alison M. Steele of Alison M. Steele, P.A., St. Petersburg; and Louis P. Petrich of Leopold, Petrich & Smith, P.C., Los Angeles, CA, for Petitioners Good Film Pictures, LLC; Broad Green Pictures, LLC; Infiltrator Productions Limited; Ellen Brown Furman; Brad Furman, Yul Vazquez; Good Film Productions U.S., Inc.; Robert Mazur, and KYC Solutions, Inc.

Jon Polenberg, Yasin Daneshfar, and Andrew Polenberg of Becker & Poliakoff, Ft. Lauderdale, for Respondent.

KHOUZAM, Chief Judge.

Francisco Javier Ospina Baraya filed a defamation suit against Penguin Random House LLC, Hachette Book Group, Inc., Robert "Bob" Mazur, and Mazur's company, KYC Solutions, Inc. (collectively, the "Book Defendants") as well as Good Film, Ltd., Broad Green Pictures, LLC, Infiltrator Productions Limited, Ellen Brown Furman, Brad Furman, Yul Vazquez, and Good Film Productions U.S., Inc. (collectively, the "Movie Defendants").[1]  Baraya alleged that he had been falsely portrayed as a money launderer and integral member of Pablo Escobar's criminal operations in Mazur's nonfiction book *The Infiltrator* as well as the movie based on the book.  The Book Defendants and the Movie Defendants filed motions to dismiss, arguing Baraya

---

[1]As Mazur wrote the book and was also involved in the making of the movie, he and his company are included with both the Book Defendants and Movie Defendants.  In this opinion, the Book Defendants and the Movie Defendants will be collectively referred to as the Petitioners/Defendants.

had failed to provide them with presuit notice as required by section 770.01, Florida Statutes (2018). Apparently agreeing with Baraya's position that section 770.01 does not apply here, the circuit court denied the motions. The Defendants filed in this court petitions for writs of certiorari seeking to quash the orders denying the motions to dismiss. "The denial of a motion to dismiss for failure to provide the presuit notice required by section 770.01 is a proper subject for certiorari review." Zelinka v. Americare Healthscan, Inc., 763 So. 2d 1173, 1173 n.1 (Fla. 4th DCA 2000). However, we are constrained to deny the petitions because Florida courts have interpreted section 770.01 to apply only to news media, i.e., the press.

Our scope of review on a petition for writ of certiorari is very narrow. "[T]he departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error." Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 889 (Fla. 2003). "A district court should exercise its discretion to grant certiorari review *only* when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." Id. Mere disagreement with the circuit court's interpretation of applicable law is an improper basis for certiorari review. Ivey v. Allstate Ins. Co., 774 So. 2d 679, 683 (Fla. 2000). Where an issue is debatable and there is no case law on point, there is no clearly established principle of law for the lower court to depart from and a petition for writ of certiorari cannot be granted. See Sjuts v. State, 754 So. 2d 781, 783-84 (Fla. 2d DCA 2000); Wolf Creek Land Dev., Inc. v. Masterpiece Homes, Inc., 942 So. 2d 995, 997 (Fla. 5th DCA 2006).

The Petitioners/Defendants argue that the circuit court violated clearly established principles of law by either misinterpreting or misapplying section 770.01, which provides as follows:

**770.01. Notice condition precedent to action or prosecution for libel or slander**

Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

The Petitioners/Defendants argue that this statute applies here because books and movies constitute "other medium." And because Baraya failed to give presuit notice as required by the statute, they argue that Baraya's suit should be dismissed. Although the circuit court did not set forth any specific findings, it rejected the Petitioners/Defendants' argument, apparently agreeing with Baraya's position that section 770.01 does not apply to books or movies and that the Petitioners/Defendants are "non-media defendants" for purposes of the statute.

Florida courts have consistently interpreted section 770.01 to apply only to news media, i.e., the press. "In its original form, section 770.01 applied only to newspapers and periodicals." Zelinka, 763 So. 2d at 1174. "In 1976, the statute was amended to include reference to 'broadcasts' in addition to 'publications' and to 'other mediums' in addition to newspapers and periodicals." Id. Even after the 1976 amendment, Florida courts have relied on the Florida Supreme Court's decision in Ross v. Gore, 48 So. 2d 412 (Fla. 1950), for guidance on the parameters of the statutory language in section 770.01. This is because, at the time of the amendment, "the

- 4 -

legislature was aware of Ross since it is presumed to be cognizant of the judicial construction of a statute when contemplating changes in the statute." Bridges v. Williamson, 449 So. 2d 400, 401 (Fla. 2d DCA 1984). "Further, because the legislature enacted only minor amendments to the statute, consistent with technological developments in mass communication media, it is presumed that it approved the interpretation given the earlier statute by the Florida Supreme Court." Davies v. Bossert, 449 So. 2d 418, 420 (Fla. 3d DCA 1984).

The supreme court in Ross held that the legislative intent behind the statute was to relieve newspapers and periodicals of punitive damages in libel and slander suits as well as "to afford to newspapers and periodicals an opportunity *in every case* to make a full and fair retraction in mitigation of the damages which a person may have suffered by reason of the publication." 48 So. 2d at 415. More broadly, "[t]he purpose of the statute is to protect the public's interest in the free dissemination of news." Mancini v. Personalized Air Conditioning & Heating, Inc., 702 So. 2d 1376, 1378 (Fla. 4th DCA 1997) (citing Ross, 48 So. 2d at 415). Florida courts use the terms "media defendant" and "non-media defendant" to "separate third parties who are not engaged in the dissemination of news and information through the news and broadcast media from those who are so engaged." Id. at 1380.

Because section 770.01 is meant to protect the free press, it only applies to media that publish news relatively quickly:

> In the free dissemination of news, then, and fair comment
> thereon, hundreds and thousands of news items and articles
> are published daily and weekly in our newspapers and
> periodicals. This court judicially knows that it frequently
> takes a legal tribunal months of diligent searching to
> determine the facts of a controversial situation. *When it is*

*recalled that a reporter is expected to determine such facts in a matter of hours or minutes, it is only reasonable to expect that occasional errors will be made.* Yet, since the preservation of our American democracy depends upon the public's receiving information speedily—particularly upon getting news of pending matters while there still is time for public opinion to form and be felt—*it is vital that no unreasonable restraints be placed upon the working news reporter or the editorial writer.*

Mancini, 702 So. 2d at 1378-79 (quoting Ross, 48 So. 2d at 415). Media defendants

that publish news quickly can also issue retractions or corrections quickly, as provided

for in section 770.02:

> **770.02. Correction, apology, or retraction by newspaper or broadcast station**
>
> (1) If it appears upon the trial that said article or broadcast was published in good faith; that its falsity was due to an honest mistake of the facts; that there were reasonable grounds for believing that the statements in said article or broadcast were true; and that, within the period of time specified in subsection (2), a full and fair correction, apology, or retraction was, in the case of a newspaper or periodical, published in the same editions or corresponding issues of the newspaper or periodical in which said article appeared and in as conspicuous place and type as said original article or, in the case of a broadcast, the correction, apology, or retraction was broadcast at a comparable time, then the plaintiff in such case shall recover only actual damages.
>
> (2) Full and fair correction, apology, or retraction shall be made:
>
> (a) In the case of a broadcast or a daily or weekly newspaper or periodical, within 10 days after service of notice;
>
> (b) In the case of a newspaper or periodical published semimonthly, within 20 days after service of notice;
>
> (c) In the case of a newspaper or periodical published monthly, within 45 days after service of notice; and

(d) In the case of a newspaper or periodical published less frequently than monthly, in the next issue, provided notice is served no later than 45 days prior to such publication.

Sections 770.01 and 770.02 work together "to afford newspapers and periodicals an opportunity to make full retraction in order to correct inadvertent errors and mitigate damages, as well as to save them the expense of answering to an unfounded suit for libel." Bridges, 449 So. 2d at 401 (citing Ross, 48 So. 2d 412).

Considering that the purpose behind section 770.01 is to protect the free press, Florida courts have interpreted the statute's "other medium" language to be limited to news media defendants who publish statements via an "other medium."  To determine whether a defendant's publication falls "within the purview of the prescribed 'other medium' entitled to presuit notice, we look to the Ross decision to determine whether the [defendant's publication] is operated to further the free dissemination of information *or* disinterested and neutral commentary or editorializing as to matters of public interest." Comins v. Vanvoorhis, 135 So. 3d 545, 557 (Fla. 5th DCA 2014).  "In defining the term 'media defendant,' courts have considered whether the defendant engages in the traditional function of the news media, which is 'to initiate uninhibited, robust, and wide-open debate on public issues.' " Tobinick v. Novella, No. 9:14-CV-80781, 2015 WL 1191267, at *8 (S.D. Fla. March 16, 2015) (quoting Ortega Trujillo v. Banco Cent. Del Ecuador, 17 F. Supp.2d 1334, 1338 (S.D. Fla. 1998)).  So even though the "other medium" language expanded section 770.01 to cover new technologies used to disseminate the news, such as internet publishers and blogs, it did not expand the reach of the statute beyond the news media.  See, e.g., Plant Food Sys., Inc. v. Irey, 165 So. 3d 859, 861 (Fla. 5th DCA 2015) (holding that "an internet publisher of various

purportedly scientific, technical, and medical journals and information" was covered by section 770.01); Comins, 135 So. 3d at 559 (holding that a blog was covered by section 770.01 and noting that "many blogs and bloggers will fall within the broad reach of 'media' " because many blogs have "primarily an informational purpose" and "usually provide[] for public impact or feedback").

This interpretation is confirmed by applying canons of statutory construction to the language of section 770.01. The canon of ejusdem generis "states that when a general phrase follows a list of specifics, the general phrase will be interpreted to include only items of the same type as those listed." State v. Weeks, 202 So. 3d 1, 8 (Fla. 2016) (quoting State v. Hearns, 961 So. 2d 211, 219 (Fla. 2007)). In other words, "where general words follow an enumeration of specific words, the general words are construed as applying to the same kind or class as those that are specifically mentioned." Id. (quoting Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1088-89 (Fla. 2005)). Applying this canon to section 770.01, it becomes clear that the general term "other medium" is limited by the specific terms that precede it: "publication or broadcast, in a newspaper, periodical . . . ."

Moreover, the doctrine of in pari materia "requires courts to construe statutes that relate to the same subject matter together to harmonize those statutes and give effect to legislative intent." Anderson v. State, 87 So. 3d 774, 777 (Fla. 2012). As explained in Ross, the notice provided for in section 770.01 and the opportunity to retract the offending statement provided for in section 770.02 go hand in hand. See 48 So. 2d at 415. Section 770.02 explicitly applies only to newspapers, periodicals, and broadcasts—the same types of publications specifically mentioned in section 770.01.

- 8 -

Reading sections 770.01 and 770.02 in harmony, it becomes clear that the "other medium" language is not meant to expand the scope of section 770.01 beyond the news media. Indeed, the "other medium" language is not found anywhere else in chapter 770. "Since no other section of [c]hapter 770 uses the language 'other medium' as found in [s]ection 770.01, we can infer reasonably that the legislature intended that term to include television and radio broadcasting stations." Davies, 449 So. 2d at 420. Interestingly, section 770.05, which addresses limitation of choice of venue, does specifically include books and motion pictures within its ambit, further showing that the legislature could have used similarly specific language in section 770.01 but chose not to do so. See Cason v. Fla. Dep't of Mgmt. Servs., 944 So. 2d 306, 315 (Fla. 2006) ("In the past, we have pointed to language in other statutes to show that the [l]egislature 'knows how to' accomplish what it has omitted in the statute in question."); Mesen v. State, 2019 WL 1966545, at *3 (Fla. 2d DCA 2019) ("When the legislature has included a provision in one statute but omitted it in an analogous statute, courts should not read it into the statute from which it has been excluded."); see also Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So. 2d 911, 914 (Fla. 1995) ("When the legislature has used a term . . . in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded.").

Although books and movies may address topics of public interest, they are not part of the traditional news media or press, and therefore the Petitioners/Defendants in this case are not "media defendants" for purposes of section 770.01. See Schiller v. Viacom, Inc., 2016 WL 9280239, at *11 (S.D. Fla. 2016) (holding that "actors, film producers and screenplay writers" were non-media defendants because they were "not

- 9 -

engaged in the dissemination of news and information through the news and broadcast media" (quoting Zelinka, 763 So. 2d at 1175)).  The Petitioners/Defendants do not speedily disseminate fact reporting or editorial content to the public.  Books and movies are typically created over an extended period of time and are not susceptible to the same inevitable errors that arise when rapidly reporting on the news.  Moreover, the frequency and wide distribution of news media allows for speedy and effective retractions when errors do happen.  Books and movies have no similar mechanism for quickly and effectively issuing retractions.  Accordingly, Petitioners/Defendants in this case are non-media defendants for purposes of section 770.01, and they are not entitled to presuit notice pursuant to the statute.

Because the circuit court was bound to follow the existing case law interpreting section 770.01, including Ross from the Florida Supreme Court and Bridges from this court, the Petitioners/Defendants cannot show a departure from the essential requirements of the law and we must deny the petitions for writ of certiorari.  However, we note that books and movies—especially nonfiction books and documentaries—do address newsworthy issues as well as serve the public interest by offering commentary on those issues.  Especially as technology develops and society's media consumption changes, becoming increasingly geared toward instantaneous access, the line between traditional news media and other forms of media may become blurred.  Many people get their news via Facebook, YouTube, Twitter, Instagram, LinkedIn, or Reddit.[2]  Podcasts

_____

[2]Katerina Eva Matsa & Elisa Shearer, News Use Across Social Media, Pew Research Center, Sept. 10, 2018, https://www.journalism.org/2018/09/10/news-use-across-social-media-platforms-2018/

- 10 -

have boomed in popularity, and many cover current events.[3]  Shows and movies—

many of which are documentaries, docuseries, or based on true stories—can be

streamed on services such as Netflix, Amazon Prime Video, and Hulu.[4]  These

technological developments may also make it easier to issue corrections and retractions

that actually reach the intended audience.  Apps can send push notifications with

corrections or retractions straight to users' smart phones.[5]  Corrections and retractions

can be posted to and shared widely on social media.[6]  Even in this case, the record

indicates that in response to Baraya's cease and desist letter the Book Defendants did

in fact revise the original 2009 edition of the book and stop selling it in both physical and

ebook formats.  Whether the presuit notice protection under section 770.01 should have

_____

[3]Jaclyn Peiser, "Podcasts Are Getting Newsier.  Here Are 8 New Ones Worth a Listen." The New York Times, Dec. 9, 2018, https://www.nytimes.com/2018/12/09/business/media/podcasts-daily-newsier-washington-post-npr.html; Amol Mhatre, "The Golden Age of Podcasts," CBS News, Jan. 20, 2019, https://www.cbsnews.com/news/the-golden-age-of-podcasts/

[4]H. Alan Scott, "50 Must-Watch Amazon Prime Documentaries to Stream Right Now," Newsweek, May 26, 2018, https://www.newsweek.com/amazon-prime-video-documentaries-must-watch-stream-right-now-50-list-slideshow-945709; "The Absolute Best Documentaries on Netflix," Thrillist Entertainment, April 29, 2019, https://www.thrillist.com/entertainment/nation/best-documentaries-on-netflix-streaming

[5]See Melina Delkic, "How to Push a Story," The New York Times, April 1, 2018, https://www.nytimes.com/2018/04/01/insider/how-to-push-a-story.html; "The Year in Push Alerts," Slate, Nov. 6, 2017, http://www.slate.com/articles/news_and_politics/politics/2017/11/the_year_in_push_alerts_how_breaking_news_became_our_lives.html

[6]See, e.g., Dan Gillmor, "Can our corrections catch up to our mistakes as they spread across social media?" Nieman Lab, March 15, 2019, https://www.niemanlab.org/2019/03/can-our-corrections-catch-up-to-our-mistakes-as-they-spread-across-social-media/; Billy Perrigo, "How This Radical New Proposal Could Curb Fake News on Social Media," TIME, Feb. 28, 2019, http://time.com/5540995/correct-the-record-polling-fake-news/

a wider reach in light of recent technological developments is a matter for the Florida Legislature to decide.

Denied.

LaROSE and SMITH, JJ., Concur.