HELEN JENKINS, Plaintiff, *v.* NEWS SYNDICATE CO., INC.,
Defendant.

Supreme Court, New York County, November 5, 1926.

**Literary property — action for damages predicated on defendant's publi-
cation of news story prepared by plaintiff — plaintiff gave defendant
synopsis of contemplated stories but subsequently notified defendant
she would not write for it — defendant's publication contained article
which was substantial reproduction of substance of articles plaintiff
planned to write for defendant — published matter was not news, but
was literary creation of plaintiff and as such is property right — plain-
tiff's complaint states cause of action.**

In an action for damages against the defendant, publisher of a daily newspaper,
a complaint which recites that after plaintiff gave defendant a synopsis of a
series of contemplated news stories concerning New York society, which she
proposed to write for the defendant but subsequently notified it she would not
write, defendant published an article which was a substantial reproduction of
the substance of the article plaintiff had planned to write and had exhibited to
the defendant, states a cause of action, for the published matter was not news
but was a literary creation of the plaintiff, and as such is a property right, for
the use of which defendant must pay.

MOTION to dismiss amended complaint for insufficiency.

*Beekman, Bogue, Clark & Griscourt,* for the plaintiff.

*Dewitt & Van Aken* [*Harry H. Van Aken* and *Arthur Moynihan*
of counsel], for the defendant.

GLENNON, J.   The amended complaint contains two counts.   In
the first it is alleged, in substance, that defendant publishes a news-
paper known as the *Daily News* on week days and the *Sunday News*
on Sundays; that in December, 1925, defendant requested plaintiff
" to write, for a compensation to be agreed upon, one or more
articles for the defendant for publication in its said newspaper
with reference to the social entertainments given or conducted
in what is commonly known as ' New York Society,' and more
particularly those entertainments known as ' debutante parties; ' "
that a representative of defendant had a conference with plaintiff
with reference to plaintiff's plans for the form and substance of
said articles, including various ideas, opinions and conclusions of
plaintiff in respect of the topic or topics proposed by defendant to
comprise the main subject-matter of said article or articles; that
such oral statement was made and such synopsis given by plaintiff
to defendant's representative solely for the purposes of such nego-
tiations; that while the negotiations were still pending plaintiff
notified defendant she would not write such proposed articles and

refused to consent to the publication of the substance and subject-matter thereof; that thereafter and on the 27th of December, 1925, the defendant in an issue of the *Sunday News* published an article or story purporting to be an interview with plaintiff; that upon the same page of the newspaper was published a portrait of plaintiff, together with her name; that the article published was substantially a fair and accurate reproduction of the form and substance of the articles planned, proposed and discussed by plaintiff with defendant, and of plaintiff's ideas, opinions and conclusions in respect of the topic proposed by defendant to comprise the main subject-matter thereof, being in a large part expressed in the precise language of the plaintiff and being in substance her own composition; that said article was published without the consent or permission of plaintiff after she refused to have it printed or published by the defendant; and that the article and the ideas, opinions, conclusions and matter therein contained had never before been published by the plaintiff. For a second count plaintiff, in addition to the matters set forth, alleges that while negotiations were pending between plaintiff and defendant, plaintiff reduced such ideas, opinions and conclusions to writing, in the form of memoranda and notes for use in the preparation of such proposed article or articles.

Assuming as we must that the allegations set forth in plaintiff's complaint are true, I am of the opinion that plaintiff has a right to obtain money damages from defendant. It should be borne in mind that defendant sought to buy the literary property from plaintiff. It would be improper to classify the matter published as " news." It was not a report of recent occurrences, as is generally understood by the term " news." We find literary, dramatic and musical creations among those which are recognized as property by the common law.

In *Palmer* v. *DeWitt* (47 N. Y. 532) Judge ALLEN said, in part (p. 536): " The author of a literary work or composition has, by law, a right to the first publication of it. He has a right to determine whether it shall be published at all, and if published, when, where, by whom, and in what form. This exclusive right is confined to the first publication. * * * It is said by YATES, J., in *Millar* v. *Taylor* (4 Burr, 2303, 2379), that ' it is certain every man has a right to keep his own sentiments, if he pleases: he has certainly a right to judge whether he will make them public, or commit them only to the sight of his friends. In that state, the manuscript is, in every sense, his peculiar property; and no man can take it from him, or make any use of it which he has not authorized, without being guilty of a violation of his property.

And as every author or proprietor of a manuscript has a right to determine whether he will publish it or not, he has a right to the first publication; and whoever deprives him of that priority is guilty of a manifest wrong; and the court have a right to stop it.' " (See, also, *Tompkins* v. *Halleck*, 133 Mass. 32.)

I cannot see any distinction between this case and one where a lecturer is afforded protection against publication of his thoughts, ideas and conclusions. In *Abernethy* v. *Hutchinson* (3 L. J. Ch. 209) plaintiff, a distinguished surgeon, sought to restrain the publication in *The Lancet* of unpublished lectures which he had delivered in St. Bartholomew's Hospital in London. Lord ELDON granted the injunction on the ground of breach of confidence. He said, in part, that " When persons were admitted, as pupils or otherwise, to hear these lectures, although they were orally delivered, and although the parties might go to the extent, if they were able to do so, of putting down the whole by means of shorthand, yet they could do that only for the purposes of their own information, and could not publish for profit that which they had not obtained the right of selling."

It is to be noted that the effect of the complaint is to allege that, by offering to purchase the articles, the defendant induced plaintiff to disclose what she could sell, and although failing to agree on her terms defendant used her product, it being set forth that the newspaper published what was " in substance her own composition." This, according to the complaint, was not mere " news," nor the substance of an ordinary " interview," but " her article," appropriated by one who ascertained its contents under circumstances which implied that it would not be used without compensation. In this article, which the pleading shows to have been substantially complete when it was revealed to defendant's representative, plaintiff had a common-law property.

I do not think that there is much force to the argument made by defendant that the ideas expressed by plaintiff were not original. Very few literary, musical or artistic ideas are really novel.

In his discussion of the right to privacy, which appeared in 4 Harvard Law Review, page 193, Mr. Louis D. Brandeis, now a justice of the United States Supreme Court, in collaboration with Mr. Samuel D. Warren, gave careful consideration to similar questions.

The case of *Bristol* v. *Equitable Life Assurance Society* (132 N. Y. 264), relied upon by defendant, is not in point. There the plaintiff asserted that he had unfolded a certain plan of advertising to the defendant insurance society while seeking employment with it. His theory was that he was entitled to an accounting because the company had adopted the plan and by the use of it had increased

its business. Here we have a case where defendant sought to employ plaintiff and while negotiations were pending obtained plaintiff's views concerning the matters she was to write upon. When negotiations failed it seemed but fair to assume that there was an implied understanding that defendant was not to use, for profit, the matters which plaintiff refused to sell.

For the foregoing reasons the motion will, therefore, be denied. Settle order.