Thomas J. LLOYD, Individually and as President of the Amalgamated Meat Cutters and Butcher Workmen of North America, a voluntary unincorporated association, and Patrick E. Gorman, Individually and as Secretary-Treasurer of the Amalgamated Meat Cutters and Butcher Workmen of North America, a voluntary unincorporated association, on behalf of all members of the Amalgamated Meat Cutters and Butcher Workmen of North America, Plaintiffs,

v.

GERBER PRODUCTS COMPANY, a corporation, Defendant.

Civ. A. No. 2011.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Nov. 22, 1966.

Asher, Greenfield, Gubbins & Segall, Chicago, Ill., Charles R. Garner, Fort Smith, Ark., for plaintiffs.

Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., Shaw, Jones & Shaw, Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, Chief Judge.

There is before the court a motion, filed October 24, 1966, by defendant for

summary judgment dismissing the complaint. Simultaneously with the filing of the motion, the defendant served and submitted a memorandum brief in support thereof. Upon receipt thereof, the court, upon motion of the plaintiffs extended the time to November 19, 1966, for plaintiffs to respond to the motion for summary judgment. On November 10, 1966, plaintiffs served and submitted their brief in opposition to the motion. On November 14, 1966, the defendant served and submitted reply brief in opposition to the plaintiffs' brief and in support of the motion.

The suit was originally filed on March 9, 1966, in the United States District Court, Northern District of Illinois, Eastern Division, and was transferred to this court pursuant to 28 U.S.C.A. § 1404(a). While the suit was pending in the Northern District of Illinois, the defendant on May 27, 1966, filed a motion "for the entry of an order striking the complaint and dismissing this lawsuit for the reason that said complaint fails to state a claim upon which relief can be granted." The Illinois court did not rule on the motion, and on October 14, 1966, this court entered an order overruling said motion to strike and dismiss.

Jurisdiction rests upon diversity of citizenship and the amount involved. No question has been raised relative to jurisdiction, and the court is of the opinion that it has jurisdiction of the claims alleged by plaintiffs. Linn v. United Plant Guard Workers of America, Local 114 et al., (1965) 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582.

In paragraphs 10 and 11 of the complaint it is alleged:

"10. That during the proximate period between July 15, 1965 and November 9, 1965 Local 425 of Amalgamated was engaged in organizing the employees of the defendant at its plant at Fort Smith, Arkansas. That the National Labor Relations Board, an arm or agency of the United States Government, scheduled an election among the employees of said plant to be held on November 9, 1965. The said employees were to be given a choice at said election of voting in favor or against their representation by Local 425 of Amalgamated.

"That the defendant, Gerber Products Company, a corporation, the employer of the personnel who were scheduled to vote at said election, with intent to mislead said employees and to injure and cause irreparable harm to Amalgamated and the individual plaintiffs and to destroy their good name, reputation, credit and business, did wickedly and maliciously compose, print, publish, circulate and distribute amongst its said employees on or about November 2, 1965, a certain circular in words and figures as follows, to-wit:

"TO ALL EMPLOYEES:

"If you were a union member of Food Handlers Local 425, AFL–CIO, you would find these surprises waiting for you in the constitution of this union: * * *

"(3) Page 20. I provide that any property your local member might buy or own is to be controlled if the local loses its charter by the International Secretary-Treasurer."

"11. That the defendant knew, or by the exercise of reasonable care or diligence could or should have known, that the contents of said circular as aforesaid were untrue and false, but not withstanding, composed, printed, published and distributed the same amongst its said employees for the express purpose, design and intent to destroy the good name, credit, integrity, and reputation of the individual plaintiffs and of Amalgamated and was designed to influence its said employees to vote against representation by Local 425 of Amalgamated and thereby, by such malicious, false and fraudulent means, intended to cause irreparable harm and financial and other damage or injury to the plaintiffs and Amalgamated."

In paragraph 13 of the complaint the plaintiffs alleged:

"13. That by reason of the false, untrue and malicious composition, printing, publishing and distribution of the aforesaid circular, the employees of the defendant at their plant at Fort Smith, Arkansas voted at the election scheduled as hereinabove stated against representation by Amalgamated; that such voting was the direct result of the false and fraudulent misleading statement contained in said circular and the fear on the part of said employees that their property would be controlled by the Secretary-Treasurer of Amalgamated in the event of the loss of its charter by Local 425. Said circular had a direct influence upon the voting and upon the ultimate results as aforesaid."

In paragraph 14, inter alia, it is alleged:

"That as a result of the untrue, false and malicious publication of the contents of said circular, Amalgamated was exposed to public ridicule and contempt, that its credit and reputation was greatly endangered and hindered and said plaintiff was on account thereof damaged and otherwise injured to the extent and in the amount hereinafter claimed."

The plaintiffs pray for the recovery of $250,000 "general damages" and $1,000,000 for "punitive damages."

The defendant in support of the motion contemporaneously with the filing of the motion filed the affidavits of 163 employees, which indisputably reflect that none of the 163 employees were influenced to vote against the plaintiff union in the November 9, 1965, election. An examination of the affidavits shows that 8 of these employees did not vote in the election; 34 of those that voted did not read the complained-of statement; 92 do not even remember whether they read it or not; one of the proposed affiants, Arnold L. L. Reynolds, did not wish to sign the affidavit; 22 of the voters stated in their affidavits that they read the complained-of statement but that they were not influenced by the way they voted in the election; 2 of the voters read the statement complained of and were influenced in their vote by it, but understood that the letter and the statement contained therein referred to property of the Local Union. One of the persons who voted stated that she thinks that she read something similar but that it did not influence the way that she voted. One of the voters changed the proposed affidavit to state that he went into the Army on September 15, 1965, and returned to work in February 1966. Also, the affidavit of Hal Wardell, Plant Manager of the defendant, was filed, together with the names of approximately 295 persons who were eligible to vote. Two hundred and fifty-seven persons voted in the election, and the results were as follows: 1 ballot was voided; 97 votes were cast in favor of the Union; 159 votes were cast against the participating labor organization. The statement complained of by plaintiffs was distributed only to the employees of the Fort Smith, Arkansas, plant of the defendant.

On November 12, 1966, Food Handlers Local 425 of the Amalgamated Meat Cutters, AFL–CIO, filed with the National Labor Relations Board timely objections to the conduct affecting the results of the election, a copy of which was served on the defendant. The petition set forth nine objections to the election, which were duly considered by Mr. Henry L. Jalette, Acting Regional Director, Twenty-Sixth Region, N. L. R. B., Memphis, Tennessee, who certified on December 17, 1965, that a majority of the valid ballots "has not been cast for Food Handlers Local 425 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, and that the said union is not the exclusive representative of the employees of Gerber Products Company."

The last act complained of by plaintiffs occurred in Fort Smith, Arkansas, and the substantive law of Arkansas is controlling and the claims must be determined by the law of Arkansas.

Insull v. New York-World Telegram, Inc., (N.D.Ill.1959) 172 F.Supp. 615.

Rule 56, Fed.R.Civ.P., provides that the court, in the consideration of a motion for summary judgment, must determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Under the law of Arkansas the court is of the opinion that there is no genuine issue as to any material fact, and that the defendant is entitled to a judgment as a matter of law.

In Marion County Cooperative Ass'n v. Carnation Co., (8 Cir. 1954) 214 F.2d 557, the court beginning at page 561 said:

"It is clear that no genuine issue of material fact existed as to any of the facts stated in the affidavits or depositions. The question, therefore, resolves itself to this: Is a general allegation in a complaint, standing alone, sufficient to withstand a motion for summary judgment supported by a prima facie showing that no genuine issue of material fact exists?

"Courts, including our own, which have considered this question have uniformly answered it in the negative. In Durasteel [Co.] v. Great Lakes Steel Corp., supra, it was said [205 F. 2d (438) 441], 'If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment.' Cf. Hurd v. Sheffield Steel Corp., supra. The reason for the rule is apparent. Rule 56 would be rendered useless were the allegations of the pleadings to be determinative of a motion for summary judgment." (Citing cases.)

In Horne v. Federal Reserve Bank of Minneapolis, (8 Cir. 1965) 344 F.2d 725, the court at page 729, in referring to allegations in the complaint which state individual damage and injury, said:

" * * * it is settled that summary judgment looks beyond pleading allegations to the true facts involved, in determining whether or not a genuine issue is present for determination by the trier of fact."

In Washington Post Company v. Keogh, (D.C.Cir.1966) 365 F.2d 965, the court, beginning at page 967, said:

"A motion for summary judgment should be granted where it is shown that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. In deciding whether a genuine issue of fact is raised in any case, a number of general considerations are relevant. First, the right to trial by jury is at stake, so courts must be ever careful to grant summary judgment only when no issue of fact is controverted or turns upon a choice between permissible inferences from undisputed evidence. See Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910, cert. denied, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951). This need for care has given rise to the valid generalizations that summary judgment must be denied when there is 'doubt' whether an issue of fact has been raised, and that summary judgment is not usually appropriate when the issue raised concerns a subjective state of mind.

"These generalizations do not, however, relieve courts of their responsibility to decide whether a genuine issue of fact exists. That doubt concerning the issue should be resolved against the movant may assist courts in disposing of troubling cases after deliberation, but it provides no assistance in the deliberative process itself. That state of mind should generally be a jury issue does not mean it should always be so in all contexts, especially where the issue is recklessness, which is ordinarily inferred from objective facts. Summary judgment serves important functions which would be left undone if courts too restrictively viewed their power. Chief among these are avoidance of long and expensive litigation productive of nothing, and curbing the danger that the threat

of such litigation will be used to harass or to coerce a settlement. Asbill & Snell, Summary Judgment Under the Federal Rules—When an Issue of Fact is Presented, 51 Mich.L.Rev. 1143, 1144 (1953)."

The plaintiffs have not presented any affidavits, depositions or other documents in opposition to the motion. Thus, there is before the court only the pleadings with their exhibits, the motion for summary judgment, and the supporting affidavits filed therewith.

█ In ascertaining the meaning of written words to determine whether or not they are libelous, the entire article must be construed. The portion complained of by plaintiffs is as heretofore set forth. After an examination of the entire publication, the court is of the opinion that the publication was not libelous per se. Hon. Robert A. Leflar, distinguished Professor of Law at the University of Arkansas, in an article entitled "Legal Liability for the Exercise of Free Speech," 10 Ark.L.Rev., p. 155, 169–170, reviewed all of the cases for libel that had been decided by the Supreme Court of Arkansas, and stated: "Most of them relied on the criminal statute making such statements actionable per se."

█ Libel which is actionable per se is discussed in Reese v. Haywood, (1962) 235 Ark. 442, 360 S.W.2d 488, in which the court quoted from Studdard v. Trucks, 31 Ark. 726, which in effect declared the rule to be that where the natural consequence of the words is a damage or if they are prejudicial to a person in office or to a person of a profession or trade, they are themselves actionable.

In Honea v. King, (1922) 154 Ark. 462, at page 469, 243 S.W. 74, at page 76, the court said:

"The general rule is also that the words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used and the ideas they are adapted to convey to those who read them. Skaggs v. Johnson, 105 Ark. 254, 150 S.W. 1036."

It must be borne in mind that the article complained of was distributed only to the employees of the defendant who were eligible to vote in the election. It was not generally circulated, and when the entire article is considered, it is clear that the article does not impeach the honesty, integrity, veracity, virtue or reputation of the plaintiffs. See Ark. Stat.Ann., (1964 Repl.), § 41–2401. Since the publication complained of is not libelous per se, then the burden is upon the plaintiffs to show damage before they would be entitled to recover. Reese v. Haywood, supra. See, also, Studdard v. Trucks, supra.

In disposing of the prior motion to strike and dismiss, the court by letter opinion addressed to all the attorneys stated:

" * * * since special damages have been alleged, it is incumbent upon the court to determine the issues according to the statement above. This the court cannot do without the aid of testimony or other evidence which either side may wish to present."

The evidence submitted by the defendant in the form of affidavits, as well as the record of the review of the election in all of its aspects by the N.L.R.B., establishes without question that the plaintiffs have not suffered any damage by reason of the publication complained of, and the record is such that the plaintiffs would be unable to produce any evidence to substantiate any alleged claim of damage. The plaintiffs were given an opportunity to submit affidavits controverting the affidavits submitted by the defendant. This they have failed to do. The affidavits conclusively show that a majority of those voting in the election were not influenced in any manner by the circulation of the article among them prior to the election. Since the article complained of was not libelous per se, and the result

of the election was not affected in any manner by the article, and ¹plaintiffs have failed to show any special damages, the court is of the opinion that as a matter of law the defendant is entitled to a judgment.

The plaintiffs on their brief contend: "Summary judgment should not be granted based on questionable affidavits. Plaintiffs should be afforded their right to cross-examine the persons signing the affidavits.

\* \* \* \* \* \*

"We do not know the circumstances under which these affidavits were signed. It appears that they were all signed during working hours, and notarized by three individuals. We do not know whether the signing was in fact voluntary, how much time was allotted for the reading of the affidavit, whether they were handed to the workers by a supervisor, what statements were made orally to the workers when the affidavits were handed to them, etc.

\* \* \* \* \* \*

"Plaintiffs should not be deprived of their fundamental right to cross-examine these individuals in open court on the witness stand."

The case of Dyer v. MacDougall, (2 Cir. 1952) 201 F.2d 265, was a suit for damages for an alleged libel and slander. A motion for summary judgment on counts 2, 3 and 4 was filed by the defendant. The material question was whether the defendants showed that there was no genuine issue to try within the meaning of Rule 56(c). The defendants withdrew their motion as to the second count and left the motion applicable only to the third and fourth counts. In the third count the plaintiff alleged that MacDougall had said to a lawyer named Almirall that a letter sent out by the plaintiff to the shareholders of a certain corporation was "a blackmailing letter." In the fourth count it was alleged that MacDougall's wife, as his agent, said to Mrs. Hope that the plaintiff had "written and sent out a blackmailing letter." The motion was sup-ported by the affidavits of MacDougall, MacDougall's wife, and Almirall, and by a deposition of Mrs. Hope. Each of the defendants unequivocally denied the utterance of slander attributed to him or her, and Almirall and Mrs. Hope denied that she or he had heard the slanders uttered. The plaintiff replied with several affidavits of his own, the contents of all of which would, however, be inadmissible as evidence at a trial upon the issue of utterance. The trial court sustained the motion and dismissed the third and fourth counts on the ground that upon the trial, the plaintiff would have no evidence to offer in support of the slanders except the testimony of witnesses, all of whom would deny their utterance. The contention of plaintiff was substantially the same as the contention of plaintiffs in the instant case, but Judge Hand, in affirming the judgment of the lower court, at page 269 said:

"There remains the second point which we reserved for separate discussion: i. e. whether by an examination in open court the plaintiff might extract from the four witnesses admissions which he would not have got on the depositions that he refused. Although this is also at best a tenuous possibility, we need not say that there could never be situations in which it might justify denying summary judgment. It might appear for example that upon a deposition a witness had been recalcitrant, or crafty, or defiant, or evasive, so that the immediate presence of a judge in a court-room was likely to make him tell more. That would be another matter; and it might be enough. But the plaintiff is in no position to invoke such a possibility for he has refused to try out these witnesses upon deposition, where he might discover whether there was any basis for supposing that awe of a judge was necessary to make them more amenable. A priori we will not assume that that is true. The course of procedural reform has all indeed been towards bringing witnesses be-

fore the tribunal when it is possible; but that is not so much because more testimony can be got out of them as because only so can the 'demeanor' evidence be brought before the tribunal."

As stated by Judge Hand, the plaintiffs in the instant case are in no position to contend that the court should not accept at face value the affidavits and documents tendered by the defendant because the plaintiffs filed no counter-affidavits or made no effort, although they had the oportunity to do so to take the deposition of any of the affiants, and having failed to comply with the rule by supplying affidavits or other documents in support of their contention, their contention cannot be considered in determining the adequacy of the motion for summary judgment.

Judgment is being entered today granting the motion of defendant for summary judgment and dismissing the complaint of plaintiffs.