William D. HURLEY and Frank G. Hurley, Plaintiffs,

v.

NORTHWEST PUBLICATIONS, INC., a corporation, Defendant.

No. 3–67 Civ. 46.

United States District Court
D. Minnesota,
Third Division.

Sept. 28, 1967.

William D. Hurley, pro se and for plaintiff Frank G. Hurley.

Murnane, Murnane, Battis & deLambert, by E. W. Murnane, St. Paul, Minn., for defendant.

NEVILLE, District Judge.

This diversity action seeks recovery of $140,000 for each of two brothers, co-plaintiffs, and is founded upon three counts of libel and one count of invasion of the right of privacy. All stem from the publication in defendant's newspaper, the St. Paul Dispatch, on February 25, 1965 of an article on the front page of the second section entitled "Lawsuit Filed in Estate Fight". The complaint avers that statements defamatory of the plaintiffs were contained in the publication.

The article was written by a staff writer for the newspaper, one J. C. Wolfe, and is based upon and is essentially a condensed report of a complaint in a lawsuit filed the same day in Ramsey County District Court in St. Paul, Minnesota, in an action brought by the First Trust Company of St. Paul as special administrator of the estate of Agnes M. Hurley, deceased. This action named as defendants the plaintiffs in this present action, as well as their mother and their four sisters. The action sought to recover for the estate assets claimed to have been wrongfully transferred to the defendants (including these plaintiffs) prior to Agnes M. Hurley's death.

There is basically no dispute that the newspaper article in question is an ac-curate report and a fair abridgment or condensation of the contents of the complaint, and that it quotes correctly therefrom. The language in the article which is claimed to be actionable is found in three paragraphs therein. The sixth paragraph states that the lawsuit:

" * * * contends that virtually the entire fortune was depleted by the heirs of Frank Hurley in the two years preceding Agnes Hurley's death."

In the tenth paragraph of the article it is reported that:

"According to the complaint, this money was placed in an account, with subsequent withdrawals of more than $200,000 up to the time of Mrs. Hurley's death. It is claimed these withdrawals were transferred to the defendants for their personal use."

Then in the eleventh paragraph the article states:

"It is further claimed that during those two years prior to her death, Mrs. Hurley was in a weakened condition and impaired state of mind due to age and that she was influenced in her actions by William D. and Frank G. Hurley and their mother, Mrs. Giraldin, who 'took advantage' of the fact they 'occupied positions of trust and confidence' with the now deceased woman."

The last paragraph of the article reads:

"The defense has issued a general denial of the allegations in the complaint, but declines to comment further."

The complaint referred to was the culmination of prior legal proceedings had in the Ramsey County Probate Court. Two different wills of Agnes M. Hurley had been offered by different heirs for probate and pending resolution of this dispute on November 30, 1964, the Probate Court appointed the First Trust Company of St. Paul, Minnesota, as special administrator for the purpose of collecting the assets and conserving the estate based upon a recital in the petition by one of the heirs requesting such ap-

pointment that " * * * your petitioner verily believes that decedent's estate has been substantially depleted by transfers of the above-specified investments while decedent was mentally incompetent and subject to undue influence".

The First Trust Company thereafter petitioned the Probate Court for authority to institute proceedings " * * * against Mary Hurley Giraldin, Frank Hurley and William Hurley and such other persons as may be required to recover on behalf of the above estate the value of the property owned by the decedent and caused to be transferred from said decedent * * * " prior to her death. The said petition specifically alleged that Frank and William Hurley (plaintiffs herein) had, with their mother, conspired together unduly to influence the decedent to transfer to them the proceeds of various securities then owned by the decedent.

Pursuant to this latter petition, on January 7, 1965, the Probate Court made and filed an order authorizing and directing the First Trust Company to institute an appropriate action or actions against William D. Hurley, Frank J. Hurley, Mary Hurley Giraldin and such other persons as "may be necessary" to recover the value of property owned by the decedent and caused to be transferred by her. Thereafter, the complaint of First Trust Company in St. Paul, with a copy of such probate order attached, was filed in Ramsey County District Court. Such complaint was the subject matter of the St. Paul Dispatch article and publication which is in question in this lawsuit.

Plaintiffs have filed with this court a motion for partial summary judgment, in which they ask the court to determine that they have a right to recovery as a matter of law and leave only the question of the amount of damages for the jury. Contemporaneously, defendant filed with this court a motion for summary judgment, asking a dismissal of plaintiffs' case on the merits.

■ It is claimed at the outset by the plaintiffs that the language above quoted from the newspaper article may be classified as libelous per se, and thus that special damage need not be pleaded nor proved to maintain the action. It seems apparent to this court, though not actually necessary to a decision in view of the court's ultimate ruling in this case, that the article in question is libelous per se, if actionable and if false, as tending to expose the plaintiffs to public hatred, contempt and ridicule, and to degrade them in society and lessen them in the public esteem. Hammersten v. Reiling, 262 Minn. 200, 115 N.W.2d 259 (1962); Gadach v. Benton County Co-op. Ass'n, 236 Minn. 507, 53 N.W.2d 230 (1952); see further cases cited in 11 Dunnell Minnesota Digest § 5517.

While the complaint as reported in the article may not impute to the plaintiffs any specific crime in haec verbae, in common parlance it conveys to the public implications of conduct bordering upon fraud and embezzlement. It can scarcely be argued that imputation, if false, of such conduct as set forth in paragraph eleven above quoted would not have the effect of degrading and lessening such persons in the public's esteem.

■ Assuming without deciding that the language complained of is actionable per se, such does not, however, eliminate the generally accepted requirement of proof of actual malice to warrant the recovery of general damages where there exists a qualified privilege to publish the material complained of. A qualified or conditional privilege to publish a report of a judicial proceeding has the effect of barring recovery in a libel action unless the defamatory statements are maliciously made or do not present an accurate account of the proceeding. The modern rule is stated in the Restatement, Torts, Vol. 3, § 611:

"The publication of a report of judicial proceedings, or proceedings of a legislative or administrative body or an executive officer of the United States, a State or Territory thereof, or a municipal corporation or of a body empowered by law to perform a public duty is privileged, although it con-

tains matter which is false and defamatory, if it is

(a) accurate and complete or a fair abridgment of such proceedings, and

(b) not made solely for the purpose of causing harm to the person defamed."

The defendant contends that in the instant case the article published was cloaked with the qualified privilege generally accorded to fair and accurate reports of judicial proceedings. It is the position of plaintiffs, however, that the rule enunciated in Nixon v. Dispatch Printing Co., 101 Minn. 309, 112 N.W. 258, 12 L.R.A.,N.S., 188 (1907), controls the question of privilege in the present situation. In that case, the court held that the privilege normally attaching to a report of judicial proceedings did not extend to a report based upon the mere filing of a complaint with the Clerk of Court since it would provide:

" * * * an easy and safe way * * whereby a party desiring to libel another may do so with impunity by entitling the libel in an action, labeling it a complaint, and filing it with the clerk."

The court then stated, in effect, that to allow such to stand as privileged matter would be to countenance a makeshift evasion of the constitutional guarantee to citizens of a remedy for wrongs which they may suffer. The court in Nixon distinguished the mere filing of a complaint from further proceedings had with respect thereto by noting the fact that the latter are held under the control of the court, while the former is not.

The defendant cites a number of cases from other jurisdictions apparently holding contrary to Nixon; Lybrand v. State Co., 179 S.C. 208, 184 S.E. 580, 104 A.L.R. 1118 (1936); Paducah Newspapers v. Bratcher, 274 Ky. 220, 118 S.W.2d 178 (1938); Campbell v. New York Evening Post, 245 N.Y. 320, 157 N.E. 153, 52 A.L.R. 1432 (1927). The defendant urges that the more enlightened, modern view is contrary to Nixon, a 1907 case, and that no Minnesota case has passed upon the question since.

However, the Advisory Committee Comment following the section on criminal defamation, Minnesota Criminal Code, 1963, Minn.Stat. § 609.765, says with respect to Subd. 3(4) therein (superseding Minn.Stat. § 619.55), which holds a violation of the Act justifiable if * * "The communication consists of a fair and true report or a fair summary of any judicial, legislative or other public or official proceedings;" that:

"It was not intended to change the holding in Nixon v. Dispatch Printing Co., 1907, 101 Minn. 309, 112 N.W. 258, to the effect that Minn.St. § 619.55 did not warrant a newspaper copying portions of a complaint on file with the clerk of court."

See also comment c to Restatement, Torts, Vol. 3, § 611 to the effect that some official action must be taken before privilege attaches to the reporting of a judicial proceeding.

In the view this court takes of this case, it is not necessary to decide whether the Nixon case represents the present Minnesota law. A holding in the instant case that the defendant had a qualified privilege to report the contents of the complaint filed in District Court against certain heirs of Agnes M. Hurley would not appear to be inconsistent with the Nixon rationale. The instant case presents a completely different situation. Here the complaint from which the alleged libelous matter was taken and published was filed in a State District Court pursuant to the prior order of the Probate Court arising out of probate proceedings pending therein with respect to the administration of the estate of Agnes M. Hurley. The complaint arose out of the probate proceedings and was, in effect, a logical and necessary outgrowth and continuation of those proceedings. Where as here the complaint was filed at the order and direction of the probate court, it would seem to this court to be sufficiently cloaked with official sanction to distinguish it from that situation feared by the Nixon court, that the filing of a complaint would be used as an instrument for privileged libel.

Anyone, including the defendant newspaper, could go or could have gone to the Probate Court records which are public and discover essentially the same facts as set forth in the complaint. The "proceedings" here are merged with or grow out of, or are an extension of proceedings on which a judge has passed and official action has been taken. It seems clear to this court that where as here the action was commenced by the administrator under the order and direction of the probate court the filing of the complaint was sufficiently under the court's control to confer privilege and that at that time it became a matter of public concern sufficient to make it newsworthy.

The difficult question facing the court is whether, under the circumstances herein, there is a genuine issue of material fact with respect to the existence or non-existence of actual malice on the part of defendant in the publication of the article in question. Mere so called "implied malice" is not sufficient.

The qualified privilege accorded a publisher who accurately reports legal proceedings is lost if he is motivated by malice or acts from ulterior motives designed to injure. In cases involving public officials, it is said that malice cannot be deduced from the mere fact of publication alone unless it has been or can be established that the publication is made with the knowledge that the statements are false or are made with reckless disregard of whether or not such are false. New York Times Co. v. Sullivan, 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See also Goldwater v. Ginzburg et al, 261 F. Supp. 784 (S.D.N.Y.1966). The Restatement, Torts, Vol. 3, § 611 seems to adopt even a more stringent standard where the publication relates to official proceedings. It does not use the word "malice" but states in effect (thinking of it in terms of actual malice) that actual malice will be present only if a publication was either an inaccurate report of the proceedings or "made solely for the purpose of causing harm to the person defamed". To the court this seems a greater burden of proof on the part of one who claims to have been libeled than the standard set forth in the *New York Times* case. In either event, however, and whichever standard is adopted, plaintiffs in this case must prove actual malice or its equivalent in order to remove the cloak of privilege which inures to the defendant. If there be no genuine issue of fact on this question then defendant is entitled to a summary judgment even though the words be otherwise libelous per se if not privileged.

Plaintiffs' first cause of action specifically alleges, in paragraph 8 of their complaint that the statements " * * * were published with malice". That allegation is reasserted in each of plaintiffs' remaining counts. Defendant categorically denies the allegations.

The affidavit of J. C. Wolfe, the defendant's staff writer who authored the allegedly offensive article, was presented in support of defendant's motion. It recounts that he read the complaint and the attached probate court order as filed in the District Court of Ramsey County and then contacted the attorneys representing both sides in the dispute prior to writing the article; that the attorney representing the defendants (including plaintiffs herein) in that action told him that a general denial of the allegations in the complaint would be or had already been prepared. This denial is mentioned in the last paragraph of the newspaper article. Mr. Wolfe further represented in his affidavit that he was not personally acquainted with any of the parties in any of the probate proceedings, and that he is to the present time personally unacquainted with the plaintiffs in this present action. Mr. Wolfe avers specifically that he bore no malice toward anyone at the time of his contacts with the news item and acted in good faith.

Defendant took the depositions of both plaintiffs. At pp. 152–154 of plaintiff Frank G. Hurley's deposition (at which his brother William Hurley, his attorney and co-plaintiff herein, was present) he was interrogated as follows:

"Q (By Mr. Murnane) Very well. Now, Mr. Hurley, in the complaint that you filed against

Northwest Publications you allege that this was done maliciously by Northwest Publications, do you not?

A  Yes.

Q  What evidence do you have to support that claim of malice other than the publication itself?

THE WITNESS: Do I have to answer that?

Q  (By Mr. Murnane)  You sure do.

MR. WILLIAM HURLEY: I think if you can it won't hurt anything right now. If you don't know you can just say so. If you don't know, that would be all right.

THE WITNESS: Well, I don't know.

Q  (By Mr. Murnane)  You don't know of any evidence that you have to support your claim of maliciousness on the part of Northwest Publications or the St. Paul Dispatch?

A  I think it was done with malice.

Q  I understand that's what you think and that's what you said in your complaint.

A  Right.

Q  What evidence do you have to support that other than your own viewpoint?

A  I don't know of any.

Q  Do you have any witnesses that you intend to call on the trial of this case to show that this was a malicious act on the part of Northwest Publications directed against you as an individual?

A  No.

MR. WILLIAM HURLEY: You don't think so?

THE WITNESS: No.

MR. WILLIAM HURLEY: Your answer is what?

MR. MURNANE: His answer is no.

MR. WILLIAM HURLEY: No what?

THE WITNESS: I don't know.

MR. WILLIAM HURLEY: You don't know. We can give you them, I guess, in Interrogatories.

MR. MURNANE: No, I think we will get them this way. If there are some witnesses that you contend will establish maliciousness on the part of Northwest Publications I want to know about them now. I will interrogate your brother, Frank Hurley, on that subject as to who they are and how they know and everything else if there are such people.

MR. WILLIAM HURLEY: I don't think so, no.

MR. MURNANE: I beg your pardon?

MR. WILLIAM HURLEY: I'll strike that.

MR. MURNANE: I still didn't hear.

MR. WILLIAM HURLEY: Strike that. If I said anything, strike it.

MR. MURNANE: Where are we at this point?

MR. WILLIAM HURLEY: I think we are at the point of where Frank said he didn't know if there are any witnesses or not. I would add, if you want me to, I don't think I know either at this point.

MR. MURNANE: Well, if you determine such persons will you provide them for us as soon as they are determined, if you don't know them now?

MR. WILLIAM HURLEY: I'll put it this way: We will do what we have to do to respond in any way we are supposed to."

The deposition of William Hurley and the arguments in open court at the time of hearing on the motions add nothing to the above. The mere allegation of malice, standing alone, is not sufficient to withstand a motion for summary judgment where the moving party's motion

is made and supported as provided in Rule 56(e) of the Rules of Civil Procedure. In such a case, Rule 56(e) provides:

" * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. As amended Jan. 21, 1963, eff. July 1, 1963."

■ The only written material presented by plaintiffs are legal memoranda with reference to the motions before this court, and affidavits by each plaintiff and by Agnes M. Hurley's former attorney, Joseph J. Dudley, all stating simply that none of them had been contacted by defendant prior to February 25, 1965 or at any time with regard to the publication of the article nor inquiry received from defendant as to the facts and circumstances surrounding transfers of money from Agnes M. Hurley to either of the two plaintiffs herein. A statement of Agnes Hurley's doctor was filed but has no reference to the newspaper article and is confined to the decedent's physical and mental condition. Counsel for plaintiffs stressed the fact of no contact in oral argument and also in his written brief to the court. The court is not persuaded that the fact that the newspaper reporter did not seek out the plaintiffs personally to get their version of the dispute would support an inference of actual malice on the part of defendant. He did contact both attorneys of record at the time. In any event and at the very most, his failure may evidence a slight or some degree of negligence. Such does not constitute actual malice, even if true. New York Times Co. v. Sullivan, 376 U.S. 254, 288, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ Apropos here is language from a recent summary judgment case Lundeen v. Cordner, 354 F.2d 401, 407–408 (8th Cir. 1966), to the effect that where one party has " * * * made a sufficient showing, it then rests upon the plaintiff to specify at least some evidence which could be produced at trial. Belinsky v. Twentieth Restaurant, Inc., 207 F.Supp. 412 (S.D.N.Y.1962). * * * Having completely failed to respond in any meaningful way to intervener's clear showing of the absence of a genuine issue, this amendment [1963 amendment to Rule 56(e)] clearly authorizes the entry of a summary judgment."

■ Again, quoting from Robin Construction Co. v. United States, 345 F.2d 610, 614 (3d Cir. 1965), sustaining a summary judgment, the court in *Lundeen* said:

" * * * As has often been pointed out, one who resists summary judgment but does not contradict the operative facts in his adversary's affidavit must utilize discovery, and suspicion alone * * * is not enough."

In this case, plaintiff's mere hope that somehow or other on cross examination credability of a witness such as Mr. Wolfe can be put in issue is not sufficient to resist a motion for summary judgment. A mere chance that somehow, somewhere, on cross examination or otherwise plaintiffs will uncover something which might add to their case but obviously of which now they have no knowledge, is mere speculation and conjecture and is not sufficient in view of the showing made here by the defendant. The *Lundeen* case above was again reviewed and the summary judgment affirmed in Lundeen v. Cordner, 356 F.2d 169 (8th Cir. 1966). The court is not unmindful of Williams v. Chick, 373 F.2d 330 (8th Cir. 1967), where in a death case the court indicated that summary judgment is suspect in tort cases. The reasoning of that case does not seem applicable to the situation here at hand, the question in *Williams* being whether death occurred as a direct and proximate result of negligence of the defendant's truck driver. The court concludes that plaintiffs have no evidence to meet either

standard of actual malice (if they differ) i. e., that contained and defined in *New York Times* or that set forth in the Restatement.

Plaintiffs devoted time in their oral argument and space in their briefs to the question of retraction. Minn.St. § 548.06 provides that where there has been a publication of a libel in a newspaper plaintiff is limited to a recovery of special damages unless a retraction be demanded and refused. The Statute further provides that even though a suitable retraction be published, a plaintiff may recover general damages "unless the defendant shall show that the libelous publication was made in good faith and under a mistake as to the facts". In the present case, on February 10, 1967, within a few days less than two years after the publication of the allegedly libelous article, and it will be noted some time after the settlement of the litigation surrounding the estate of Agnes M. Hurley wherein both plaintiffs renounced any interest as heirs in the estate, plaintiffs served on defendant a written demand for retraction. Pursuant thereto the newspaper published a retraction, although its counsel stated in court that he had advised the defendant that such was not legally required. Plaintiffs have devoted much of their energy in an effort to convince the court that defendant was not in good faith within the meaning of the statute, citing the fact that though the newspaper reporter contacted their attorney he did not contact either of the plaintiffs nor a former attorney for the decedent before publishing the article. Plaintiffs cite Thorson v. Albert Lea Pub. Co., 190 Minn. 200, 251 N.W. 177, 90 A.L.R. 1169 (1933). Plaintiffs also claim that the published retraction did not meet statutory specifications as to placement and size of type. Plaintiffs moved to amend their complaint more specifically to allege these facts.

■ In the court's view, if the publication was privileged, and clearly it was unless actual malice is established, the existence of the retraction statute and any action taken pursuant thereto is entirely immaterial. If a publication is privileged it is not the "publication of a libel" with which the retraction statute is concerned. Anything privileged is not libelous or actionable. The whole premise on which the retraction statute is based is that there has been published what might well be an actionable libel or defamation. The use of the term "good faith" in the retraction statute does not equate with actual malice or the standard set forth in the Restatement, Torts, supra; lack of good faith is indeed not the same as losing the protection and privilege " * * * if the report is published solely for the purpose of defaming the other and not for the purpose of informing the public".

While the court does not believe that mere failure to contact the plaintiffs personally is necessarily negligence, yet, if such it be, it might relate to good faith as required by the retraction statute but cannot be said to constitute or relate to actual malice. Thorson v. Albert Lea Pub. Co., supra, held that good faith might be lost by negligence but that such did not constitute actual malice.

■ Counsel for plaintiffs cite Allen v. Pioneer Press Co., 40 Minn. 117, 41 N.W. 936, 3 L.R.A. 532 (1889) and Moore v. Dispatch Printing Co., 87 Minn. 450, 92 N.W. 396 (1902). Neither of these cases are of particular help in the current situation. While it is true as stated in *Allen* that a publisher must take reasonable precautions, such precautions are limited to presenting a fair and accurate account of the circumstances of the legal proceedings, i. e. in this case the complaint and Probate Court Order which authorized its filing. So where a qualified privilege attaches a publisher is not under duty to determine the ultimate merits of the dispute itself. The Restatement, Torts, Vol. 3, § 611, Comment a, flatly states that the privilege surrounding the accurate reporting of judicial proceedings applies even though "the defamatory statement reported is known to be false". Moore v. Dispatch Printing Co., supra, involved not only a published statement of what actually occur-

red between the parties in a judicial trial, which to that extent clearly was privileged, but involved additional editorializing by the publisher and the drawing of inferences and innuendos. The court held that where the publication goes beyond a recitation of what actually transpired and injects material extraneous thereto, the privilege is lost as to the extraneous material. In the present case, again, it is not disputed that the publication accurately characterized the substance of the legal document filed and there was no editorializing nor any attempt to draw conclusions.

■■■ With respect to plaintiffs' fourth cause of action alleging the publication of the newspaper article to be an unwarranted invasion of plaintiffs' right to privacy in that it dealt with that concerning which the public had no legitimate interest, it seems clear that here there is no genuine issue as to any material fact. One's private affairs may wittingly or unwittingly become public, as often happens when litigation ensues, see Berg v. Minneapolis Star & Tribune Co., 79 F.Supp. 957 (D. Minn.1948). The complaint on file with the Ramsey County District Court is a public record. Likewise, the proceedings in Probate Court had with respect to the dispute surrounding the estate of Agnes M. Hurley are matters of public record. Both are or may be newsworthy.

■■■ As expressed by the note writer in 138 A.L.R. 22, 78 (1942) in a comprehensive article on the right of privacy, " * * * it is settled that the publication of a person's name or picture in connection with a news or historical event of legitimate public interest does not constitute an actionable invasion of the right of privacy". The court in Metter v. Los Angeles Examiner, 35 Cal.App.2d 304, 95 P.2d 491, 496 (1939), in addressing the same question, stated that:

" * * * while the general object in view is to protect the privacy of private life, nevertheless, 'to whatever degree and in whatever connection a person's life has ceased to be private, before the publication under consideration has been made, to that extent the protection is to be withdrawn.' Brandeis-Warren Essay, 4 Harvard L.Rev. 193, p. 214; Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964. In connection with what constitutes news regarding matters of public or general concern, it is said in Associated Press v. International News Service, 2 Cir., 245 F. 244, 248, 2 A.L.R. 317, affirmed 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293, that news is said to have 'that indefinable quality of interest, which attracts public attention'; while the court in Jenkins v. News Syndicate Co., 128 Misc. 284, 285, 219 N.Y.S. 196, 198, defines news as a 'report of recent occurrences'."

In view of what the court has heretofore said as to the complete lack of evidence of actual malice, the court need not determine that if such were present a right of privacy action might lie. There is however good authority for the proposition that malice is not an element of the cause of action for violation of right of privacy and its presence would not change the result, see *Berg,* supra, and citations therein.

The court concludes based upon the pleadings, affidavits and memoranda herein, that there is in fact no evidence from which a court could find or from which an inference could be drawn that the published report of the complaint by defendant was not a fair and accurate report thereof, or that it was in any way published maliciously or with intent to injure. Where as here, defendant has made a substantial showing through affidavits and depositions that there is no genuine factual dispute existing with respect to actual malice on the part of the publisher, plaintiffs are required to " * * * come forward with facts, not allegations, which controvert the necessary facts set forth in the moving party's case. Rule 56(e) clearly spells out this duty on the sanction of suffering a summary judgment.", Lundeen v. Cordner, 356 F.2d 169, 170 (8th Cir. 1966); see

also Lundeen v. Cordner, 354 F.2d 401 (8th Cir. 1966); Lloyd v. Gerber Products Co., 260 F.Supp. 735 (W.D.Ark. 1966).

This opinion shall serve as findings of fact and conclusions of law. An order consistent with this opinion denying plaintiffs' motion for partial summary judgment and granting defendant's motion for summary judgment of dismissal has been filed with the Clerk of this court. Plaintiffs' motion to amend their complaint in reference to the addition of the allegation relating to the retraction statute is allowed as a matter of course, there being no opposition from defendant, although from what the court has heretofore said, such allegations as are contained therein are deemed immaterial. In view of this decision, the question of a date for a pretrial conference becomes moot, and so plaintiffs' motion therefor is also denied.